## OSCAR WAKEFIELD v. THE STATE.

No. 3266.    Decided May 23, 1906.

**1.—Manslaughter—Dying Declaration—Bill of Exceptions.**

Where on appeal from a conviction of manslaughter the bill of exceptions did not sufficiently raise the question as to the admission of dying declaration, the same could not be considered.

**2.—Same—Matter Too Remote—Evidence.**

Where upon trial for murder, part of the statement of deceased admitted as a dying declaration was that when he came home on the evening of the difficulty his wife sent her little boy after a neighbor, the same was too remote to be admitted as dying declaration.

**3.—Same—Evidence—Declaration of Third Parties.**

Where upon trial for murder the evidence showed that the difficulty arose from an insult offered by the deceased to his wife who was the mother of the defendant, it was error to admit testimony that a year before the homicide the wife of deceased had expressed the wish that deceased were dead, and she would give another party, not the defendant, money to poison him.

**4.—Character of Deceased—Evidence.**

Upon a trial for murder where there was some testimony of some previous trouble between deceased and his wife in which he may have assaulted her, etc., it was error to permit the State to introduce testimony to show that the reputation of deceased was that of a quiet, peaceable citizen, defendant not having assailed the general reputation of the deceased.

**5.—Same—Evidence—Res Gestae.**

Upon trial for murder it was error to exclude evidence that shortly after the homicide a physician examined the arm of defendant and dressed a hurt found upon it, and that defendant then made the statement that he received this wound from the deceased just before the shot was fired, and that defendant threw up his arm to shield himself from the blow struck at him by deceased.

Appeal from the District Court of Falls. Tried below before the Hon. Sam R. Scott.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Nat. Lewellyn,* for appellant.

*J. E. Yantis,* Assistant Attorney-General, and *J. E. Hackett,* Assistant County Attorney, for the State.

DAVIDSON, PRESIDING JUDGE.—The conviction was for manslaughter. The first bill of exceptions was reserved to the ruling of the court admitting dying declarations. The bill is hardly sufficient under the decisions of this court to properly raise the question, especially in view of the fact that the court qualified the bill by showing that a complete predicate was laid. As presented, we do not think there was any error in admitting the dying declaration. We are only passing on the bill of exceptions as presented.

Stripling was used as a witness to prove the dying declaration, and as a part of the statement deceased stated: "That when he came home on the evening of the difficulty his wife sent her little boy after Oscar Wakefield." We do not believe it was legitimate to prove this fact as a part of the dying declaration. The dying declaration is confined to the immediate acts of the homicide, and the circumstances that brought it about and were attendant upon the tragedy. This matter is too remote to be admitted as dying declarations. Medina v. State, 43 Texas Crim. Rep., 52; 4 Ency. Ev., p. 1000, for collated cases, also p. 1002, text and notes for cases.

The same witness, Stripling, was permitted to testify that about a year before the homicide the mother of appellant and wife of deceased was at his house, and stated to him that she wished deceased was dead; that he ought to freeze to death; that he (deceased) had $400 in bank, and she would give witness one-half of it if he would poison or get him out of the way. We suppose this was admitted upon the theory that there was a conspiracy between appellant and his mother to kill deceased. Under the facts of this case, we do

not believe this testimony was admissible. It was too remote, and so far as we are able to ascertain from this record had nothing to do with appellant's connection with the homicide. It may have shown that at the time Mrs. Hill made the statement, she was feeling unkindly towards her husband, but they lived together afterwards for a year, and appellant was living not far away in the same neighborhood. The evidence shows that whatever case the State may have had grew out of matters occurring upon the evening and just preceding the homicide. The widow of deceased visited her son (appellant) during the evening preceding the homicide at night, and obtained some money from him to be sent through the postoffice to some distant parties. And while there mentioned that deceased had made an assault upon her sometime previously. On that evening she went to the postoffice, in the little village close by, as did deceased. They returned home, but not together. After the deceased reached home there came up trouble between himself and wife, the mother of appellant, and she called her younger son and sent him after appellant. He came to the residence, or within about two hundred yards of it, when deceased and his wife both went to the buggy in which appellant was seated. The difficulty immediately came up which ended in the homicide.

Over appellant's objection evidence was introduced by the State to show that the reputation of deceased was that of a quiet, peaceable citizen. This testimony was illegitimate. The trial court seemed to be of the impression that on account of some previous troubles between deceased and his wife, in which he may have assaulted her, and perhaps on two occasions for awhile was separated from her, that therefore deceased's reputation along this line was made the subject of legitimate inquiry on the part of the State. We do not so understand the authorities. Graves v. State, 14 Texas Crim. App., 113; McCandless v. State, 42 Texas Crim. Rep., 58; Kennedy v. State, 37 So. Rep., 90; Melton v. State, 83 S. W. Rep., 823; Moore v. State, 79 S. W. Rep., 566; Gregory v. State and Keith v. State, the latter two decided at the present term. In Gregory's case, it was said: "It is not sufficient merely that because of the defendant's testimony concerning the homicide, some characteristics of deceased may be brought out or made to appear. In this case appellant offered positive testimony to the effect that deceased had debauched the wife of appellant, which would indicate that he was not a person of good character for virtue, but this did not justify the State in order to meet this to resort to evidence of the general reputation of deceased as to virtue and chastity. The State could not thus meet this proof by positive evidence or proof of general reputation, and would be only authorized to introduce evidence of general reputation of the deceased in the respect offered, when appellant himself had first assailed the State's case by proof of deceased's general reputation." We have not been cited to a case, nor do we believe one can be found in this State which would justify proof by the State of general reputa-

tion of deceased, unless that reputation has first been assailed by appellant. Nor have we been cited to a case, and have been unable to find one, that would justify the accused to introduce evidence of general reputation because a defendant may have proved acts growing out of the same transaction toward appellant on the part of deceased, unless the accused had first put the reputation of deceased in evidence, unless it be the case of Everett v. State, 24 S. W. Rep., 505, and Martin v. State, 70 S. W. Rep., 973. But these cases have been expressly overruled in the Melton and Moore cases, supra. It was therefore error to admit the testimony on the part of the State in regard to the general reputation of the deceased.

Dr. Aycock, shortly after the tragedy, was examining the arm of appellant and dressing a hurt found upon it. While this was going on, appellant made a statement to the doctor, to the effect that he received this wound from deceased just before the shot was fired, and that the wound was received on the arm by his throwing it up to shield himself from the blow struck at him by deceased. We believe this testimony should have gone to the jury. The same question was decided favorably to appellant in Gregory v. State, supra; also Craig v. State, 30 Texas Crim. App., 619.

For the errors indicated, the judgment should be reversed and the cause remanded. *Reversed and remanded.*

Brooks, Judge, absent.