## T. C. Bice v. State.

### No. 3816. Decided March 6, 1907.

**1.—Murder—Charge of Court—Imperfect Self-Defense.**

Where upon trial for murder, there was a serious conflict in the testimony as to what took place at the time and just prior to and during the difficulty, and there was enough evidence to show that the question of imperfect self-defense was an issue in the case, the court should have charged upon that issue as requested by the defendant.

**2.—Same—Impeaching Witness.**

Where a witness sought to be impeached admits making the former statement, this is sufficient without introducing impeaching witnesses.

**3.—Same—Evidence—Res Gestae.**

Upon trial for murder, there was no error in admitting testimony that deceased directly after being shot made statements in regard to the shooting and want of knowledge as to who shot him. However, a request by deceased to telegraph his mother was inadmissible.

**4.—Same—Bill of Exceptions.**

Where a bill of exceptions does not set out the details of the transaction inquired about, it cannot be reviewed.

Appeal from the District Court of Marion. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Moore, Park & Birmingham, W. T. Armistead, S. P. Jones,* for appellant.—On question of self-defense: McMahon v. State, 81 S. W. Rep., 298; Swain v. State, 12 Texas Ct. Rep., 816; Hellard v. Com., 84 S. W. Rep., 329; State v. Partlow, 4 S. W. Rep., 20.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder in the second degree, twenty years in the penitentiary bein allotted appellant.

This case went on change of venue from Harrison County to Marion County. There are some questions raised as to the sufficiency of the transcript made up in Harrison County in the transfer on change of venue. We are of opinion, under the authority of Vance v. State, 34 Texas Crim. Rep., 395, that there is no such error as requires revision.

In regard to the second application for continuance, we are of opinion, without reviewing the question at length, that the diligence was sufficient, and the testimony was of sufficient importance under the record to have required it being granted, but it is not discussed in view of the fact that the judgment will be reversed upon another proposition, and the witnesses may be obtained upon another trial.

The court was requested to instruct the jury in effect, that if the defendant came upon deceased and his nephew Gully in a quarrel and interceded for the purpose of stopping it, and deceased began to abuse appellant and picked up sticks, leaving the impression upon deceased's mind that he was going to assault him with a stick, and the defendant struck the deceased with his hand and the deceased retreated, and it appeared to appellant that he was retreating for the purpose of obtaining a point of advantage from which to renew the attack, the defendant would have the right to pursue him, and if the deceased while so retreating obtained a spade or did anything indicating that he was about to strike appellant with the spade and that he believed the same would inflict upon him death or serious bodily injury, to acquit. It is further insisted that the court should. have instructed the jury if appellant began the difficulty not for the purpose of killing but only to commit an assault upon deceased, and deceased picked up a spade, which from the manner of its use or intended use it was a deadly weapon, and was about to attack appellant or use it upon him, he had a right to defend, etc. Objection was also reserved to portions of the court's charge in this connection. We believe under the facts that these points are well taken. If the State's theory was the only one, appellant was guilty perhaps of murder in the second degree as found by the jury, but there is a serious conflict in the testimony as to what took place at the time of and just prior to and during the difficulty. The State contends that appellant had informed some employees under himself about 12 or 1 o'clock on the day of the killing, which took place about 5:15 in the evening, that some parties had been imposing upon his nephew over at the shops of the Texas and Pacific Railway, and that he intended going over there to see that his nephew obtained justice, and that in pursuance of this design he went to the shops of said railway and entered the brass foundry, and began abusing deceased and making an assault upon him and continuing it until he shot deceased without provocation. Appellant denied having such conversation with reference to going to the shops of said railway for the purpose of interfering in any trouble that should possibly occur between the parties mentioned, and that he went to said railway shops for the purpose of borrowing a stencil or having one made with which to paint letters on a car that was being rebuilt at the shops of the Texas Southern Railway, in whose employ he was; that after attending to his business at the said paint shops he started away when the whistle blew, and knowing that his nephew was working in the brass shop near the paint shop, he went by for the purpose of walking home with him, a distance of some three-quarters of a mile; that when he entered the shop where his nephew worked, he found deceased and two other boys abusing his nephew, and he interfered to stop the row, when deceased turned upon him and struck him with a stick without provocation, and he slapped the deceased, and the deceased then grabbed a spade and raised it as if to strike him, and he shot deceased. Other

witnesses testify that after the deceased struck at appellant with a stick, he retreated a few steps and picked up the spade and had it at the time appellant shot. Appellant himself testified that without cause from him deceased called him a son of a bitch, and struck him with a stick drawing blood from his face; that deceased went back five or six steps and appellant followed him intending to return the blow with his hand; that as deceased backed off, appellant struck at deceased with his open hand; that as he struck, deceased picked up a spade and had it in a striking attitude when he fired at the deceased; that he continued firing, not being able to see deceased on account of the smoke arising from the first shot of his pistol. He further stated that he never drew his pistol and never intended to shoot until deceased undertook to strike him with the spade. Galloway testified that when appellant came into the shop where deceased and Gully were quarreling, appellant stepped down from the bench right in front of deceased, and that deceased then picked up two sticks about one inch in diameter and began to back away; that appellant struck at deceased with his hand open and followed him back several steps; that deceased said "Can't you get me something to hit him with?" and some one said "there is a spade," and deceased then took up the spade and raised it at appellant in a striking position, or as he puts it as if he was going to make a quick lick, that then appellant shot him. The spade was an ordinary spade with a handle about three and one-half feet long. This perhaps is a sufficient statement to show the requested instructions should have been given, as well as to throw light upon the exceptions to the charge of the court as given. If appellant went to the shop for the purpose of raising a row and inflicting upon deceased death, his case would be murder. If, anticipating that two or three parties at the shop would raise trouble with his nephew and overcome him or mistreat him, appellant had a right to be present and defend the nephew against such trouble or assault, using of course no more than necessary force to protect the life or person of his nephew. If upon reaching the scene he found his nephew in trouble with his adversaries and he interfered for the purpose of preventing it or protecting his nephew from such assault on their part, using no more force than was necessary to do so, this he had a right to do. If when he came upon the scene he found the parties quarreling and about to engage in trouble with his nephew, and he interfered without the use of a pistol and the deceased made it necessary for him to use his pistol, it would be manslaughter or self-defense, as the facts and circumstances might indicate. If he interfered for the purpose of killing the deceased, when there was no occasion for it, when a milder interference would have separated the parties, then he might be guilty of murder in the second degree or manslaughter. If when appellant came upon the scene the deceased made an attack upon him, striking him with a stick and drawing blood, and appellant killed him for this reason, it would be manslaughter. If appellant was in the wrong at

the beginning of the trouble with deceased and intended to do no more than commit an ordinary assault and battery and deceased struck him with a stick, and appellant engaged in the difficulty not for the purpose of killing and deceased retreated and picked up the spade for the purpose of using that upon appellant, it being a deadly weapon, and appellant killed him, he would be guilty of no higher offense than manslaughter and might be justifiable. If the deceased made the first attack and appellant resisted only with his hands, and deceased struck appellant with a stick and retreated and picked up a spade for the purpose of using it upon appellant, and he shot for this reason and killed, he (appellant) would be justified.

Enough of the facts have been stated to indicate that the question of imperfect self-defense was an issue in the case and should have been given in charge to the jury. The charge requested by appellant should also have been given, for it was a pertinent application, as we understand these facts, of the law of self-defense. Without going further into this phase of the case, we are of opinion that the judgment must be reversed for the reasons indicated in reference to the application of the law as given, and the refusal of the court to give the requested instructions. These issues were made by the testimony, and appellant was entitled to a charge fully informing the jury in regard to these phases of the law. See McMahon v. State, 81 S. W. Rep., 298; Hellard v. Commonwealth, 84 S. W. Rep., 329; Reed v. State, 11 Texas Crim. App., 509; King v. State, 13 Texas Crim. App., 277, and Meuley v. State, 26 Texas Crim. App., 307. One of the witnesses testified to certain facts differently from what he had sworn upon a habeas corpus trial, as well as having stated the facts otherwise to other parties. The predicate was laid for impeachment but the witness admitted his contradictory statements and that they were different from the statements upon the trial of the case. Witnesses were offered to impeach him, and the court refused to hear the testimony. As we understand the rule in regard to this matter the court was correct; that where a witness sought to be impeached admits making the former statements, or that he had made prior statements antagonistic to those testified on the trial, it is sufficient without introducing the witness to whom he made the statements or who heard him make such statements. In other words, the rule may be stated in a general way, that whenever a witness denies having made previous contradictory statements, or his memory is uncertain in regard to the matter, that in either event witnesses may be introduced to contradict him and show that he made the former statements, but where he admits making them, this is sufficient without introducing impeaching witnesses.

A witness was also permitted to testify that the deceased directly after being shot made certain statements, and among others in regard to the shooting and want of knowledge as to who shot him, which we think was admissible as part of the res gestæ, as the court certifies in bill of exceptions that it occurred immediately after the shooting

and while he was suffering from the shot, and while his shirt was still on fire as result of the pistol shot, and within a few hundred feet from where the killing occurred where he had rapidly gone. The deceased, however, made a request of one of the witnesses that he telegraph at once to his mother living at Anniston in the State of Alabama to come to him immediately. The bill of exceptions is reserved in a general way. Part of this testimony was admissible and we think part of it not, but it is not separated in the bill. Upon another trial, in our judgment, if this evidence is intended to be a part of the res gestæ, the request to send for his mother; that phase of the testimony would have no bearing upon the case and should be rejected; at least, we are unable to see why it should be in the record.

A bill of exceptions was also reversed to the failure of the court to permit the introduction of a detailed statement of a matter, among other things, set out in the bill. The court certifies in the bill that he would not permit them to go into a detail of the transaction, but permitted them to to state the matter occurred. Without having the details of the transaction inquired about before us we are unable to state whether it was of importance to be before the jury.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*