### Sid McDowell v. The State.

#### No. 4399.  Decided March 20, 1909.

**1.—Murder—Substitution of Indictment.**

Where an indictment had been lost it was proper that the court permitted the State to substitute the lost indictment. Following Withers v. State, 21 Texas Crim. App., 210.

**2.—Same—Charge of Court—Murder in the Second Degree.**

Upon trial for murder where the evidence raised the issue of murder in the

second degree, the court should charge the jury that the killing must be unlaw-
ful and done with malice aforethought.

### 3.—Same—Charge of Court—Threats—Serious Bodily Injury.

Upon trial for murder where threats were in evidence, the court should have
charged that the defendant had the same right to defend against apprehension
of serious bodily injury as he would to protect his life.

### 4.—Same—Charge of Court—Self-Defense.

Where upon trial for murder the evidence showed that the deceased had
made qualified threats directly to the defendant, and other communicated
threats; and in view of the vigorous attack made by deceased, of his superior-
ity of age, strength and size, the court should have charged self-defense gen-
erally, and the limitation of defendant's right of self-defense to defendant's re-
sistance of an attack by deceased based upon threats alone was insufficient.

### 5.—Same—Charge of Court—Deadly Weapon—Intent.

Where upon trial for murder the evidence showed that the knife used by de-
fendant was an ordinary pocketknife; that he was violently attacked by the
deceased who was superior to defendant in strength, age and weight, and that
in resisting this attack the defendant struck only one blow which happened
to strike a vital point, and this occurred by the deceased throwing up his
arm, etc., the court should have charged article 717, Penal Code, with ref-
erence to the instrument used and the manner of its use, and defendant's in-
tent to kill.

Appeal from the District Court of Jack. Tried below before the
Hon. J. W. Patterson.

Appeal from a conviction of murder in the second degree; penalty,
five years imprisonment in the penitentiary.

The opinion states the case.

*Nicholson & Fitzgerald* and *W. E. Taylor,* for appellant.—On
question of substituting indictment: Schultz v. State, 15 Texas
Crim. Rep., 258; Gillespie v. State, 16 Texas Crim. App., 642. On
question of court's charge on murder in the second degree: Clark
v. State, 51 Texas Crim. Rep., 519, 102 S. W. Rep., 1136. On
question of court's charge on self-defense: Coleman v. State, 49
Texas Crim. Rep., 82, 90 S. W. Rep., 500; Patillo v. State, 22 Texas
Crim. App., 586; Dent v. State, 46 Texas Crim. Rep., 166, 79 S.
W. Rep., 525. On question of intent to kill: Hardin v. State, 51
Texas Crim. Rep., 559, 103 S. W. Rep., 402.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This conviction was for murder
in the second degree, the punishment being assessed at five years
confinement in the penitentiary.

The evidence substantially shows that appellant and deceased were
raised boys together and their families had intermarried. Deceased
was 19 and appellant 17 years of age. They had made a horse
trade sometime prior to the difficulty. The mother of appellant
becoming dissatisfied with the transaction brought suit ultimately
to rescind the trade. On the trial it resulted in her favor and this

enraged and angered deceased. On the day of the trial the parties at interest as well as quite a crowd of people congregated at the county seat where the trial occurred and were in and about the courthouse. Deceased had asked for damages. The jury brought in a verdict rescinding the trade, but said nothing in their verdict in regard to damages. They retired to consider that matter and subsequently returned a verdict in favor of the mother of appellant refusing to award damages to deceased. This seemed to have angered deceased to considerable extent. Just about the time, or perhaps a little before, the jury returned the verdict in the law suit, deceased spoke to appellant's mother, Mrs. Bowlen, and threatened to take the life of appellant, whereupon she took her son to one side and requested him to go home. That he then left the courthouse in obedience to instructions in a frightened condition of mind. Frank Turner testified that he was with deceased on the day of the killing and drank whisky with him out of the same bottle. That while together they talked about the civil case. The deceased asked him how he thought the case would come out. Turner replied that he did not know, whereupon deceased said, "There is one thing, if he wins that case the son-of-a-bitch will never win another." This statement was at once communicated to appellant. In a subsequent conversation between the witness and deceased, the witness borrowed the knife of deceased. Upon handing the knife to the witness the deceased remarked, "You want to be careful with that knife; it is sharp and I expect to use it." When appellant left the courthouse in obedience to his mother's instructions for the purpose of going home he went out where the horse was tied, and was standing there when deceased approached him. Deceased's course of conduct and manner of movement indicated anger and determination. That he rapidly approached appellant, passing the parties near by until he reached appellant. Upon reaching appellant he put his clinched fist under the nose of appellant and pushed his head back. There is some confusion as to the position or condition of the other hand of the deceased. The remark made by deceased to appellant's mother was, referring to appellant, "I will kill him, God-damn him." Appellant had his knife out and had been whittling at the time he was approached by deceased, and was holding it in his hand at the time deceased made the assault, and when the assault was made appellant struck one blow, which the physicians indicate severed the artery just under the ear from which the deceased bled to death. The knife was a pocket-knife, the blade being something like two and one half or three inches in length. There had also been a previous conversation between appellant and deceased in the courthouse before appellant left that building. This testimony also showed anger and was of a threatening nature on the part of deceased. At the time deceased approached appellant he remarked in an angry tone of voice: "You have walked my log this time, but you can't

do it again," and it was at this juncture that he pushed his closed fist against appellant's chin or under his nose and shoved his head back, at which juncture appellant used his knife. There was but one blow struck, deceased fell. Appellant stood there and made no further attempt or demonstration. He was arrested and carried to jail. This perhaps is a sufficient summary of the testimony to review the questions suggested for revision.

When the case was called for trial it was made to appear to the court that the indictment had been lost, and motion was made by the prosecution to substitute the lost instrument. Appellant had not been arraigned, nor had he plead to the indictment prior to its loss, and in fact never plead to the original indictment, but was forced to trial on the substitute indictment, and to this he did not plead. This is assigned as error. Under the decisions in this State the court's action was correct in permitting the substitution of the indictment. Without reviewing the question we cite in support of this conclusion the case of Withers v. State, 21 Texas Crim. App., 210.

Criticism is made of the charge on murder in the second degree. The charge criticised is as follows: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a knife; and if you believe same was a deadly weapon or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused without adequate cause, and not in defense of himself against an unlawful attack, reasonably producing a rational fear or expectation of death or serious bodily injury, with the intent to kill, did in Jack County, Texas, cut and stab and thereby kill the said Jim Paschall, etc., you will find him guilty of murder in the second degree." The criticisms are, first, that it omits to tell the jury that the killing must be unlawful, and, second, that it must be done on malice aforethought. Upon another trial these matters should be included in the charge submitting the issue of murder in the second degree. While it may be doubtful, under the construction placed on article 723, Code Crim. Proc., that these omissions were of such serious character as to require a reversal of the judgment, in view of the other charges given defining malice aforethought, yet all the necessary ingredients of murder in the second degree, when that issue is submitted to the jury, should be embodied in the charge applying the law to the facts.

It is claimed that the court's charge with reference to the law of threats is too meager and restrictive in that it confines the right of self-defense under the law of threats to a purpose and intent to kill. Appellant asked special instructions in regard to this matter which were refused, embodying the further proposition that he had the same right to defend against apprehension of serious bodily injury. We are of opinion that appellant's contention in this respect is correct. A party has the same right to defend his person

from serious bodily injury under the law of threats as he would to protect his life. Without reviewing the court's charge, and special charges asked and refused, we are of opinion upon another trial the court should instruct the jury as well in regard to the defense against apprehension of serious bodily injury as against his life.

The court failed to charge self-defense from any other standpoint than that of resistance of an attack made by reason of threats to kill. Appellant reserved exceptions and requested instructions which were refused, to the effect that he had a right to defend his life against an attack threatening death or serious bodily injury. We think this contention is sound. Deceased had made qualified threats directly to appellant, and in addition had informed the mother of appellant that he intended to take his life, as well as stating to Turner that he would never win another law suit over him. Deceased had attacked appellant in the manner indicated in the statement in the early part of this opinion. He was superior to appellant in age, strength, size and weight as all the testimony concedes, weighing some fifteen or thirty pounds more than appellant. The record fails to show that deceased had his knife in his hand at the time he made the attack and rather excludes that fact. In view of the vigorous attack made, the superiority of age, strength and size and of the threats, appellant had reason to believe that the attack had begun which might end in his life. Deceased was armed with a knife shown by the testimony to be superior in size to that owned by appellant, and further shown to be very sharp. Under these facts appellant had a legal right to have the jury instructed in regard to self-defense generally.

There is another question suggested for reversal, to wit: the failure of the court to charge article 717 of the Penal Code, which is as follows: "The instrument or means by which a homicide is committed are to be taken into consideration in judging of the intent of the party offending; if the instrument be one not likely to produce death, it is not to be presumed that death was designed, unless from the manner in which it was used such intention evidently appears." While the evidence shows that the pocket-knife used by appellant was an ordinary pocket-knife, the blade being perhaps two and one half or three inches in length, he was violently attacked by a man of superior strength, age and weight, and in resisting this attack he struck one blow, and, as the witnesses indicate, rather at random. It happened to strike a vital point and death resulted shortly afterwards from bleeding. The physicians testify in substance that usually the knife would not be a deadly weapon, but might, of course, if a vital point was reached. This was the only blow given by appellant and deceased fell, and the difficulty ended. Under the circumstances of this case we are of opinion that the provisions of article 717 should have been given in the charge to the jury. A charge was asked by appellant submitting this issue to the jury, that if they

should so find he would be guilty of an aggravated assault. The charge was refused and it is properly presented for revision. In this connection perhaps it may be well enough to state a little more fully the facts. Dr. Wade testified that the knife used was an ordinary pocket-knife. That the same blow on any other part of the body would not have produced death unless some artery or vital organ was struck. He further testified there were more chances for death not to result from such a stroke with this knife in defendant's hand than chances for fatal results.

Massengale testified that the knife defendant used was an ordinary pocket-knife. That he had measured the blade and the length was two and one half inches. He further testified that he saw defendant strike deceased and that deceased threw up his arm knocking the lick to deceased's neck. Kemp testified that he saw defendant at the time the blow was inflicted, and deceased had one fist in defendant's face with his head shoved back, and when defendant struck deceased threw up his left arm and deflected the blow upwards towards his neck. Considering the manner of the assault and how the course of the blow was deflected, we think it was important to appellant that the substance of the requested special charge should have been given. Whether in the absence of such testimony the refusal to so charge would be reversible error when a knife of the character and size shown in this case was used, we need not now determine.

For the errors pointed out, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*