## E. C. GAINES v. THE STATE.

No. 453.   Decided March 16, 1910.

Rehearing denied April 13, 1910.

**1.—Murder—Advancing Case—Practice on Appeal.**

Where, upon appeal from a conviction of manslaughter, the record showed that appellant was on bail, the fact that he was a member of the Legislature, and that the latter might be called together before his appeal was disposed of, was no reason for advancing his case.

**2.—Murder—Evidence—Defamatory Circulars—Truth of Publication.**

Where, upon trial for murder, the defense introduced in evidence certain printed circulars published by the deceased, which charged defendant with failing to pay his occupation tax and to work the streets, and that warrants for his arrest had been issued against him, and pleas of guilty had been entered by him, and defendant claimed that said circulars were a slander on his character, and so aroused his passion that his mind was incapable of cool reflection, etc., there was no error to permit the State, on cross-examination of defendant, to show that the circulars were substantially true, so the jury could determine the issue as to who was the aggressor in the controversy between them.

**3.—Same—Evidence—Telegrams—Secondary Evidence.**

Upon trial for murder, it was reversible error to permit the State to introduce in evidence a certain telegram purporting to be that of the defendant with the letters "D. H." upon it, and permitting the witness to testify that these letters indicated that the telegram had not been paid for by the defendant, this being an issue in the case.

**4.—Same—Evidence—Dying Declarations—Shorthand Facts.**

Upon trial for murder, there was no error in admitting in evidence the written statement of the deceased made shortly before his death, and in which the deceased among other things stated that the defendant was trying to get out his gun at that time, as this statement, in connection with the entire statement made by the deceased, was not the expression of an opinion but a shorthand rendering of the facts. Following Douglass v. State, 54 Texas Crim. Rep., 639, and other cases.

**5.—Same—Charge of Court—Provoking Difficulty.**

Upon trial for murder, where there were such facts and circumstances in evidence that raised the issue of provoking the difficulty, there was no error in the court to charge the law upon this issue.

**6.—Same—Self-Defense—Provoking Difficulty—Intent—Charge Requested.**

Where, upon trial for murder, the court's charge required the jury to believe from the evidence that the defendant had formed a design to kill the deceased, had armed himself and sought a meeting with the latter for the purpose of taking his life, and that having done so defendant did the acts and made the statements which under the circumstances were calculated to and did provoke the deceased to attack him, before the defendant would be guilty of culpable homicide, such charge logically carried with it the condition that the acts done by the defendant must have been intended to provoke the difficulty, and there was no error in refusing a requested charge thereon.

**7.—Same—Charge of Court—Self-Defense—All the Evidence.**

Where, upon trial for murder, the evidence raised the issue of provoking the difficulty and also that of self-defense, a contention by defendant that the dying declarations of deceased showed that the defendant did not act in self-defense, and therefore a charge on provoking the difficulty was precluded and should not have been given, was untenable, as the court must charge on issues arising from all the evidence.

**8.—Same—Charge of Court—Provoking Difficulty—Converse Proposition—Affirmative Charge.**

Where, upon trial for· murder, the evidence raised the issue of provoking the difficulty, but there was also evidence that the defendant did not make any statement or do any act reasonably calculated and intended to provoke a difficulty, but that he acted in self-defense, and the court charged on provoking the difficulty but did not charge the converse of the proposition on the defendant's theory of the case, the same was reversible error. Following Airhart v. State, 51 S. W. Rep., 214, and other cases.

**9.—Same—Charge of Court—Abandonment of Difficulty.**

Upon trial for murder, where the issue of abandonment of the difficulty was not raised by the evidence, the facts showing but one continuous transaction, there was no error in the court's failure to charge thereon.

**10.—Same—Charge of Court—Right of Going Armed—Explanation—Peaceable Manner.**

Upon trial for murder, where the evidence showed that the defendant called upon the deceased for an explanation of the latter's conduct in distributing certain defamatory circulars, it was reversible error to instruct the jury that the defendant had the right to arm himself and seek an explanation of the deceased in a peaceable manner, with reference to the latter's conduct. Following King v. State, 51 Texas Crim. Rep., 208. Ramsey, Judge, dissenting.

**11.—Same—Charge of Court—Serious Bodily Injury—Threats.**

Where, upon trial for murder, the evidence raised the issue of self-defense and threats by the deceased, it was reversible error in the court's charge in omitting to instruct the jury that the defendant had the right of self-defense against the apprehension of serious bodily injury as well as in the preservation of his life, especially where the evidence showed that the means used by the deceased would not necessarily have caused the death of the defendant. Following McDowell v. State, 55 Texas Crim. Rep., 596.

Appeal from the District Court of Hood. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*John J. Hiner, Herbert N. Goodson* and *G. H. Goodson,* for appellant.—On question of dying declaration: Lockhart v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024; Williams v. State, 51 S. W. Rep., 220; Irvine v. State, 26 Texas Crim. App., 37, 9 S. W. Rep., 55; Drake v. State, 29 Texas Crim. App., 265; Harper v. State, 56 L. R. A., 372; Fulcher v. State, 28 Texas Crim. App., 465, 13 S. W. Rep., 750.

On question of court's charge on provoking difficulty and that such issue was not in the case: Lockhart v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024; Garza v. State, 88 S. W. Rep., 231; Mc-

Candless v. State, 57 S. W. Rep., 672; Pedro v. State, 48 Texas Crim. Rep., 406, 88 S. W. Rep., 233; Franks v. State, 47 Texas 'Crim. Rep., 638, 88 S. W. Rep., 923; Saens v. State, 20 S. W. Rep., 737, and cases cited in opinion.

On question of defendant's right of self-defense even if he provoked a difficulty: Gray v. State, 55 Texas 'Crim. Rep., 90, 114 S. W. Rep., 635; Young v. State, 53 Texas Crim. Rep., 614, 110 S. W. Rep., 445; Winters v. State, 37 Texas Crim. Rep., 582, 40 S. W. Rep., 303; Vann v. State, 45 Texas Crim. Rep., 434, 77 S. W. Rep., 813; Carter v. State, 37 Texas Crim. Rep., 403, 35 S. W. Rep., 378.

On question of the court's failure to charge the converse proposition of provoking the difficulty: Cases cited in the opinion.

On question of the court's omission to charge on serious bodily injury in his instruction on self-defense: Martin v. State, 42 Texas Crim. Rep., 144, 58 S. W. Rep., 112.

Upon question of court's charge to seek explanation of deceased in a peaceable manner: Cases cited in opinion.

On question of introducing evidence as to truth of circulars: Massie v. Com., 29 S. W. Rep., 871; Martin v. Com., 19 S. W. Rep., 580; Riggs v. Com., 45 S. W. Rep., 866.

*John A. Mobley,* Assistant Attorney-General, and *Ben Palmer,* District Attorney, and *W. Poindexter* and *Callaway & Callaway,* for the State.—On question of the court's failure to charge on converse proposition of provoking the difficulty: Winters v. State, 51 S. W. Rep., 1110; Shannon v. State, 35 Texas Crim. Rep., 2.

On question of proving truth of circulars and nonpayment of telegram: Williams v. State, 51 S. W. Rep., 222.

On question of necessity of charge on provoking difficulty: Rhea v. State, 37 Texas Crim. Rep., 138; Taylor v. State, 38 Texas Crim. Rep., 552; Johnson v. State, 43 Texas Crim. Rep., 476, 66 S. W. Rep., 845; Laws v. State, 101 S. W. Rep., 987; Smart v. State, 101 S. W. Rep., 989; Gray v. State, 55 Texas Crim. Rep., 90, 114 S. W. Rep., 635.

On question of the court's charge in using the phrase "in a peaceable manner:" Craiger v. State, 48 Texas Crim. Rep., 500; Keith v. State, 50 Texas Crim. Rep., 63; Mitchell v. State, 50 Texas Crim. Rep., 180; Melton v. State, 47 Texas Crim. Rep., 451; Winters v. State, 37 Texas Crim. Rep., 582, and cases cited in opinion.

On question of court's charge on self-defense and omitting the phrase "serious bodily injury:" Franklin v. State, 31 S. W. Rep., 643; Holley v. State, 92 S. W. Rep., 422; Sanches v. State, 55 S. W. Rep., 44.

RAMSEY, JUDGE.—We have considered appellant's motion to advance the submission of his case, the record of which was filed in this court on January 3 of this year. The record shows that appellant is on bail. The only ground suggested for advancing the case is that appellant is a member of the Legislature and it is probable there will

be a called session of the Legislature in the near future, and that he should be free, in the event of such call, to give attention to his public duties without the embarrassment of resting under a conviction of a felony. This, of course, is a matter that neither we nor the appellant can know, and about which, in the nature of things, much uncertainty must exist. We have before us many cases in which issues of great public importance are involved and which should be, in the interest of the general public, advanced. In addition to this we have before us many cases, some of which have been heretofore submitted, in which litigants are confined in jail. We feel like that ordinarily cases ought not to be taken up out of their order unless some public and general good was to be subserved thereby.

It is accordingly ordered that the motion to advance be and the same is hereby overruled.

*Overruled.*

RAMSEY, JUDGE.—The appeal in this case is prosecuted from a conviction had in the District Court of Hood County, Texas, on the 18th day of October, 1909, convicting appellant of the offense of manslaughter and assessing his punishment at confinement in the penitentiary for a term of three years. The killing out of which the prosecution arose occurred in Comanche County, and the indictment was returned in said county, and the case thereafter transferred to Hood County on a change of venue. The record is a very voluminous one and exhaustive briefs have been filed both by counsel for the State and for appellant. There are many questions raised on the appeal, many of which we deem it worth while to notice. It will, therefore, be difficult within the limits of any opinion we ought to be called on to write to make a complete statement of the case. The difficulty of doing so, it may be added, is enhanced by the fact that on every issue we are met by contradictions in the evidence. It may, however, be sufficient to state that appellant and J. W. Reese were and had been for some time before the killing, which occurred on the 23d day of July, 1908, rival candidates for the Legislature in Comanche County, and growing out of the canvass before the electors, and due in some measure to the nature and character of their political differences, much heat and unfriendliness was developed. The record strongly indicates that appellant had been more circumspect in his speech than the deceased. In fact, the record may be scanned in vain for any abusive remarks indulged in by appellant. On the other hand it is conceded, and is undoubtedly true, that the deceased in the prosecution of his campaign was guilty of both intemperate language in public speech, and the circulation of literature containing the most severe reflections upon appellant.

Among other things it appears in the evidence that only a day or two before the killing there had been published by deceased, and on his authority, circulars which denounced appellant as a double-dealer,

referred to him as "The Shame of Comanche County," and were headed "Whipped and Disgraced." It seems from the testimony of appellant, and it is in line with the uncontradicted facts, that some of these circulars were thrown in the yard of the defendant on the day before the killing. There is also evidence in the record, which is to some extent disputed, however, that other parties than deceased had made threats against appellant; and their character, considered without reference to the persons making them, were of such gravity as induced him, we think not without reason, to arm himself for his protection. There is no very satisfactory evidence to our mind of any threats by deceased. Appellant testified that he was not afraid of deceased and did not expect him to attack him unless he provoked him to do it. It appears in the evidence that appellant and deceased lived in the same general portion of the town of Comanche; that on the day of the homicide deceased left his home, walking to town, and that appellant on the morning of the same day started to town in his buggy. It would require a more detailed explanation than seems necessary to make the precise movements of the respective parties understood with reference to this portion of the evidence. It is admitted, however, by appellant that as he was going to town he discovered deceased and concluded to accost him and demand an explanation of his conduct in continuing what he (appellant) thought was an uncalled for attack upon him. The movements of appellant at this point, and other circumstances appearing in the evidence, are such as in our judgment to raise the issue that he deliberately accosted deceased, watched his movements, and in connection with all the circumstances in the case, raised the issue that he went to him with the purpose and intent of provoking a difficulty. This was the view of the matter taken by the court below, and is the subject of serious contention in this court. Appellant's able counsel make a strong argument that this issue was not in the case at all. Without setting out in detail the grounds upon which we rest our own conclusion, it seems clear to us that whatever the truth may be there were facts and circumstances in evidence that raised this issue. There were no witnesses to the killing. What took place at the immediate time of the homicide is gleaned from the testimony of appellant; his res gestae declarations made immediately thereafter and the dying declarations made by deceased. Appellant claimed to have acted in self-defense. This was denied by the State, and it was the State's further contention that if at any time appellant's acts seemed to be or were indeed in self-defense that he was guilty of such conduct as to justify the jury in believing that he had deliberately provoked the deceased to attack him with the intention of killing him, and that his acts had the effect intended. So far as it may become necessary in explanation of the several matters discussed in the opinion additional statements of the facts will be made. The above is the merest outline of a voluminous record, but will, we believe, be sufficiently full to illus-

trate and render readily understood the matters hereinafter touched upon.

1.    The first question raised on the appeal questions the correctness of the court's action in requiring and compelling appellant to testify as to the truth of certain charges contained in the circulars published by deceased.    Some of these circulars charged him with failing to pay his occupation tax as a lawyer, and also failing to work the streets, and stated in substance that warrants for arrest had been issued and pleas of guilty had been entered by appellant.    During the trial appellant, as part of his case, had offered in evidence these circulars and other inflammatory and denunciatory language of Reese to and concerning him (appellant), in order to illustrate his temper and mind and show the animus of the said Reese as substantive facts to be considered as to who began the difficulty.    The objections were overruled and the appellant was compelled to answer and did answer that the facts stated in the circulars were substantially true; that is, that judgment of conviction had been entered against him in respect to the matters alleged. This same matter was presented also in respect to the testimony of U. C. Lovejoy.    Lovejoy, it seems, was at the time of the matters inquired about, judge or recorder of the Mayor's Court.    He testified that warrants had been issued on affidavits charging appellant with failure to pay his occupation tax as a lawyer and failure to work on the public streets, and that warrants of arrest had been issued and judgments of guilty entered therein, as stated in the circulars.    These matters were further objected to on the ground that they were immaterial and irrelevant; that the truth or falsity of said statements were not issues in the case, and that same would be prejudicial to the defendant before the jury and were calculated to injure and prejudice his case before the jury, by proving convictions on these charges.    The bill of exceptions relating to the testimony of Lovejoy is approved by the court with the following explanation:    "That the defendant had theretofore introduced in evidence the circular issued by deceased charging Gaines with failing to pay his occupation tax, with conviction therefor, etc., and was making the contention that said circular was a slander on his character, and being such, it aroused his passion till his mind was incapable of cool reflection, etc., and the court felt that the State under the circumstances was entitled to show that it was not a slander but the truth."    It is evident, of course, if it was admissible at all, the testimony of appellant touching the same matter could only be justified on the same ground.    We think this testimony was admissible for the purpose of showing what appellant's condition of mind actually was, and to enable the jury to judge and determine the state of his mind and how same was affected by the charges contained in the circular.    It must seem evident that the truth or falsity of these statements would be an important matter in its effect upon appellant's mind and as producing resentment, and as illustrative of his conduct.    In view of the further fact that, as stated by the court,

there was a studied attempt throughout the case to prove that the action and conduct of deceased was without justification, or warrant, it became, we think as explanatory of his conduct, important for the jury to know whether the charges made by him were true or false. A jury would, we believe, attach some importance to this fact in determining the issue as to whether deceased attacked appellant and in judging generally of whether he was the aggressor in the controversy between them. We think perhaps that the court might, and should have limited the purpose of this testimony as affecting and bearing on these issues, though this question is not raised on the appeal.

2. On the trial the State introduced one E. E. Anthony, and was permitted to prove by him, over objections of appellant, that he was the editor of the Comanche Chief; that he had been a telegraph operator and understood how to interpret the words, checks and figures placed by telegraph operators on telegrams, and that at said time there was delivered to him as editor and publisher of said paper by the telegraph operator at Comanche, Texas, a telegram purporting to have been sent by E. C. Gaines, from Austin, Texas, the telegram the witness then held in his hand, and he stated that there was marked on it when delivered to him the letters "D. H." in the usual place and manner on said telegram, intended to indicate that the same had been sent "dead-head," that is, without any payment being made therefor. To the introduction of this testimony appellant objected on the ground that as to whether appellant sent said telegram, or paid or failed to pay for same, was not an issue in the case; that the testimony was immaterial and irrelevant and calculated to prejudice the rights of appellant before the jury, and because there was no evidence that defendant sent said telegram, and there was no evidence showing where or who put said letters "D. H." on said telegram or that appellant had any knowledge of or was present when same was done; and there was nothing to show that defendant was in any way connected therewith; and that the same was hearsay and not admissible to prove that defendant did not pay for sending the same. In this connection it should be stated that it developed in the evidence that appellant, who had been in 1906 elected as a member of the Legislature in Comanche County, stated that if elected he would not receive railway transportation or other favors from corporations. Among the circulars published by deceased was one questioning the good faith and integrity of appellant in respect to this matter and averring that he had, as evidenced by the telegram in question, sent messages free, implying that he was using a frank and that he had been unfaithful to his pledge and promise to his people. It will be noted further that the objection made, as well as the testimony offered, involves the issue as to whether *in fact* the message had been sent without payment therefor. This could not, we think, be proved by the production of a telegram at Comanche, purporting to have been so sent. It is possible that it would have been admissible if limited to the sole purpose of

showing the information upon which deceased acted in making his charge, but it is too clear, we think, for discussion that when the issue in question arose as to whether in fact it was so sent that proof of this issue could not be made by the production of the telegram purporting to have been received two hundred miles or more from where appellant was at the time, without some showing that in truth and in fact the telegram was sent on a frank. Nor can we say, in view of the issue raised on the appeal, and particularly in view of the heated state of feeling existing between the parties and the importance the jury might attach to what they would believe was, in the light of this testimony, a violation of a pledge given to his constituency and his departure from a pledge deliberately made, would or should be regarded as harmless.

3. During the trial the State, after making proof of same, introduced in evidence the dying declaration in writing of the deceased. This is as follows: "I had started for my mail. I met E. C. Gaines coming up the street in his buggy. I was on the sidewalk. He turned his horse to the left and started to get out. He unbuttoned his coat, then asked me if I published that circular denouncing him as a coward. He then picked up a stick and struck at me. I threw up my arm and caught the lick; the stick broke and I caught him by the hair and pulled him towards me. He was trying to get out his gun at that time. He pulled loose from me and ran behind his buggy and got his gun. I grabbed a rock and started towards him. He ran around his buggy and I kept as close to him as I could. He shot at me two or three times before he hit me. When he shot me I was on the north side of the buggy, about the hind wheel, and he was near the fore wheel on the other side. I threw two or three rocks at him during the time, but did not get any rocks until he got out his gun. I saw him get his pistol; he got it with his right hand from the inside of his coat." The portion of same objected to is the following clause thereof: "He was trying to get out his gun at that time." This was objected to because not a statement of any fact, but that same was an inference and opinion of deceased and could only have been such from the facts as they transpired at the time. In support of this objection many cases are cited by appellant and some of them go far towards sustaining his contention. We believe, however, that when read in connection with the entire statement that the clause objected to is not subject to the objection made. It is stated in the form of a fact and not as the expression of an opinion. It is, we think, a shorthand rendering of the facts and when read in the light of the entire statement, and particularly the concluding sentences of the statement, "I saw him get his pistol; he got it with his right hand from the inside of his coat," was not subject to the objection made by appellant. In the case of Clark v. State, 56 Texas Crim. Rep., 293, 120 S. W. Rep., 179, we had before us a question quite similar to that here presented. In that case it was sought to be proven that at the

time and place when he surrendered his pistol, Clark said to the officer that he had killed White in self-defense. Among the objections to it was that it expressed a conclusion on the part of the witness, which involved both the law and facts and was such as could not be testified to by him while he was a witness on the stand. Touching this matter we there said: "As we gather from the bill, the learned trial court seems to have rested his action in excluding the particular portion of the testimony ruled out, upon the ground that it was a conclusion, and not a statement of the facts. That the declaration was somewhat in the form of a conclusion is undeniable. As to whether in any case one has acted in self-defense, or kills another in self-defense, may be a mixed question of law and fact; and yet it seems clear that where one in agony or excitement makes the declaration that he had shot another in self-defense, it is after all something more than a conclusion, and is equivalent to the affirmation that he had shot his assailant in protection of his own person or his own life. It is a shorthand rendering of the facts, and is consistent alone, and embraces the statement that the act was done, not in aggression, but for the purpose of warding off or preventing injury or death. See Douglass v. State, 54 Texas Crim. Rep., 639 (Texas Cr. App.), 114 S. W., 808; Gregory v. State, 50 Texas Crim. Rep., 73, 94 S. W. Rep., 1041; Wakefield v. State, 50 Texas Crim. Rep., 124, 94 S. W. Rep., 1046; Craig v. State, 30 Texas Cr. App., 619, 18 S. W. Rep., 297; Bice v. State, 51 Texas Cr. Rep., 133, 100 S. W. Rep., 949; Scott v. State, 49 Texas Cr. Rep., 386, 93 S. W. Rep., 112; Gray v. State, 47 Texas Cr. Rep., 375, 83 S. W. Rep., 705; McGee v. State, 31 Texas Cr. Rep., 71, 19 S. W. Rep., 764; Kenney v. State, 79 S. W. Rep., 817; Croomes v. State, 40 Texas Cr. Rep., 672, 51 S. W. Rep., 924, 53 S. W. Rep., 882; Pratt v. State, 53 Texas Cr. Rep., 281, 109 S. W. Rep., 138; Ex parte Albitz, 29 Texas Crim. App., 128, 15 S. W. Rep., 173; Com. v. Van Horn, 4 Lack. Leg. N. (Pa.), 63; see 21 Cyc., p. 973, footnote; Lockhart v. State, 53 Texas Crim. Rep., 589, 111 S. W. Rep., 1024; Connell v. State, 46 Texas Crim. Rep., 259, 81 S. W. Rep., 746. We think the rule laid down in Bateson v. State, 46 Texas Cr. Rep., 34, 80 S. W. Rep., 88, and other cases on which the trial court evidently acted is not correct." It is sometimes quite difficult to determine whether a statement such as this is a mere conclusion or the statement of a fact. If it stood alone unexplained by what followed it there would be much more force in appellant's contention.

4. On the trial serious objection was made to the action of the court in charging on the issue of provoking the difficulty, and the correctness of the court's charge in respect thereto is probably the most serious question presented in the record. This issue is presented in many forms and the action of the court touching the same is questioned and objected to for many reasons. We think that the court was justified, and indeed required, under the facts, to charge on the issue of provoking the difficulty. We have concluded, however, from a most

careful examination of the court's charge and a most painstaking investigation, that the charge of the court in some respects was erroneous, and that there was error in not charging on some phases of the issue of provoking the difficulty under the facts of the case. It should further be stated that all of these matters were called to the attention of the trial court during the trial by proper bills of exception, and the matter was presented to the trial court and is presented to us in a manner to be most highly commended. It would serve no useful purpose to set out here the facts or reasons on which we have concluded that the issue of provoking the difficulty was in the case. Since we have found the court below did not err in so doing, it seems sufficient to express our approval of the court's action in this respect.

5.   One of the paragraphs of the court's charge complained of is to the effect: "You are further instructed, gentlemen, as a part of the law of this case, that if you believe from the evidence in this case, beyond a reasonable doubt, that the defendant formed the design to kill the deceased, and that he armed himself with a pistol, and sought a meeting with deceased for the purpose and with the intention of taking the life of the deceased, and that when he met the deceased he did acts and made statements which under the circumstances existing between the two men were reasonably calculated to and did provoke the deceased to attack him, the defendant, and that in defense of himself against such attack the defendant shot and killed the deceased, you will find him guilty of murder in the second degree, or of manslaughter, according to the facts and circumstances of the case." This paragraph of the court's charge is objected to, and in connection therewith the following proposition submitted: That although the words and acts of the appellant may have been of such a nature as to provoke the attack and in fact provoked the attack, still the defendant would not lose his right of self-defense unless such words or acts were done and said with the intent to provoke such attack. The correctness of this general proposition is undeniable. This rule has been recently stated and this general subject so thoroughly treated in the recent case of Young v. State, 53 Texas Crim. Rep., 416, and Gray v. State, 55 Texas Crim. Rep., 90, that it would seem to require no further treatment or elaboration. That appellant's proposition is correct is undoubtedly true, under these authorities and on sound legal reasoning. We think, however, that while somewhat differently expressed from what it might have been that the charge of the court in this case implies of necessity and carries with it an instruction substantially in harmony with appellant's contention and in strict harmony with the rule laid down in the above cases. Under this instruction the jury are required to believe that the appellant had formed a design to kill deceased, had armed himself and sought a meeting with the deceased for the purpose of taking his life, and that having done so he did the acts and made the statements which, under the circumstances, were calculated to and did provoke the deceased to attack him. We think

that this instruction carried with it clearly and logically a charge that the acts done must have been intended to provoke the difficulty. It could perhaps have been more clearly expressed, but we think it was sufficiently clear on this subject.

6. The charge of the court on this subject is further .objected to for the reason that in substance it is never proper to charge the doctrine of provoking a difficulty unless the issue of self-defense is raised in the case, and it is urged that the dying declaration of Reese shows that appellant, as a matter of fact, did not act in self-defense. This, we think, is a very restricted view. Of course, the charge must be given with reference to all the testimony and the testimony of appellant taken in connection with that of Reese, and as viewed in the light of statements made by him, we think raises the issue of self-defense, and that the record does not sustain appellant's position.

7. Among the objections to the court's charge on this subject, covered both by bill of exceptions taken at the time and reserved in motion for new trial, was the objection, that the court should have charged the jury affirmatively the converse of the issue of provoking a difficulty, and should affirmatively have instructed the jury that in the event they found from the evidence (a) that the defendant did not make any statement or do any act reasonably calculated and intended to provoke a difficulty; or (b) did not in fact provoke a difficulty; or (c) did not intend to provoke a difficulty, that in such case his perfect right of self-defense would be unaffected. These complaints are well founded, and in the respects complained of. We think it clear that the court erred in not submitting these issues. It seems to be the settled law of this State that where the issue of provoking the difficulty is in the case, and the testimony raises the issues here made by appellant's testimony that the converse of the proposition should be charged. Appellant's testimony squarely raised the issue that he had no intention of provoking the difficulty; that his purpose in approaching deceased was solely and only to require an explanation of his conduct; that he had no intent or purpose of provoking a difficulty with a view of taking deceased's life, and his evidence also raises the issue, which was a question for the jury, that nothing he said or did was of such a character as should in reason or probably would in fact have provoked the difficulty. In the case of Sanders v. State, 50 Texas Crim. Rep., 430, it was held that upon a trial for assault with intent to murder, a charge on provoking the difficulty which did not state that the language used or the act done must be reasonably calculated to bring on the difficulty, and which did not state the converse of the proposition stated to be necessary to provoke the difficulty, was error. Judge Brooks, speaking for the court, uses this language: "Furthermore, appellant complains that the court should have told the jury that if he provoked the difficulty with such apparent intention to kill, then he would not be guilty of any higher grade of offense, if the assaulted

party had died, than manslaughter. The converse of the first proposition, as stated, should have been given. Airhart v State, 51 S. W. Rep., 214; McCandless v. State, 57 S. W. Rep., 672; Shannon v. State, 35 Texas Crim. Rep., 2." See also Beard v. State, 47 Texas Crim. Rep., 50; Bonner v. State, 29 Texas Crim. App., 223; Drake v. State, 46 Texas Crim. Rep., 448; Stewart v. State, 36 Texas Crim. Rep., 130, and Craiger v. State, 48 Texas Crim. Rep., 500. In this case the court squarely held that where the evidence for the State on a trial for murder might justify a charge on provoking the difficulty, but the evidence of the defense more cogently showed that the difficulty was brought on by the deceased and not the defendant, it was clearly incumbent on the court to charge the converse of the theory of provoking the difficulty. See Young v. State, 41 Texas Crim. Rep., 442.

8. It is next insisted that the court erred in not charging the jury that if they should find that in fact appellant did provoke the difficulty, and yet if he in good faith quit and retired therefrom and was afterward followed up and assaulted by deceased, then his right of self-defense would revive, because there was evidence in the case tending to show that although appellant may have provoked the difficulty, yet he in good faith retired therefrom and was followed up and attacked by the deceased. As we read the record this issue was not in the case. From the time the parties met and the first word was spoken and the first hostile demonstration made, there was no abandonment, no cessation or change except as in the progress of the encounter the position of the parties changed. We do not believe that the court erred in this matter.

9. It is urged that there is error in the 20th paragraph of the court's charge. This paragraph is as follows: "Furthermore, if the defendant was informed and believed that the deceased was distributing circulars and making statements slanderous to the character of defendant, he had the right to arm himself and to go to the deceased and inquire of him in a peaceable manner with reference to said circulars and statements, and if, when accosted in a peaceable manner, the deceased attacked the defendant, the defendant would have the right to stand his ground and defend himself against such attack with such arms; and if it became necessary for the preservation of his own life, or if he believed it was necessary, he would have the right to take the life of the deceased, and would in no way compromit his right of self-defense by arming himself."

The first objection urged against this charge is to that portion of same which instructs the jury that appellant would have the right to go to deceased and inquire of him in a peaceable manner with reference to said circulars and statements. This charge was objected to for the reasons there urged that it is erroneous and hurtful in view of the undisputed evidence from both appellant and deceased, that the acts and language of Gaines were not calculated to provoke an attack and

under such circumstances the jury might have considered that though Gaines' manner of expression, his tone of voice and general appearance indicated a feeling of anger and outrage at deceased's conduct, that therefore he did not go in a peaceful manner or accost deceased in a peaceful manner. To sustain their proposition counsel for appellant cite us to the cases of King v. State, 51 Texas Crim. Rep., 208, and McCleary v. State, 57 Texas Crim. Rep., 139, 122 S. W. Rep., 26. In the King case, supra, the expression of the charge was "in a friendly spirit." In the McCleary case the expression of the charge was "on a peaceable mission." In this case the expression of the charge is "in a peaceable manner." By reference to the report of the case in McCleary v. State, supra, it will be noted that the writer did not express concurrence in the action of the court in holding the use of the expression "on a peaceable mission" erroneous. The majority of the court hold this charge erroneous. It is my opinion that if, however, it could be held and should be held that the court was correct in condemning the use of the language "on a peaceful mission," I yet think that it was not only not objectionable, but both proper and required that the court should charge the jury that in order to properly exercise the absolute right which the law gives one to arm himself and go to an adversary and make inquiry of him that he should do so in a peaceable manner. It would not necessarily follow that his failure to do so would wholly deprive him of the right of self-defense, but before the jury should be instructed that his arming himself and going to his adversary and making a demand for an explanation should not even be a circumstance against him, or operate in any manner to impair his right of self-defense, his conduct in doing these things should be in such manner as not to give needless offense or be in itself of a character to provoke a difficulty. This, as I understand, is the holding of the court in practically all the cases, unless it may be stated otherwise in some of the expressions used in the King case, referred to above.

10. Finally, it is objected that the paragraph of the court's charge above quoted was erroneous, where the court instructed the jury that "if it became necessary for the preservation of his own life, or if he believed it was necessary, he would have the right to take the life of the deceased, and would in no way compromit his right of self-defense by arming himself." This charge is objected to for the reason that, as urged, appellant would have the same right to have acted in the event he thought it necessary to protect himself against serious bodily injury, although he might not have thought this was necessary to protect his life, that is, he had the same right to act against the apprehension of serious bodily injury as against the taking of his life; whereas, the court in effect informed the jury that he could have only acted to protect his life. We think these complaints are meritorious and well founded and in view of the weapons sought to be used by Reese, which were rocks, and under the evidence of their size and weight not suffi-

cient, necessarily, to have caused death, but which, in the hands of a man of Reese's size, might have been the means of the infliction of serious bodily injury, this limitation of the court's charge must be held injurious. Almost this precise question came before the court and was ruled in favor of appellant in the recent case of McDowell v. State, 55 Texas Crim. Rep., 596, 117 S. W. Rep., 831. It is there said, "It is claimed that the court's charge with reference to the law of threats is too meager and restrictive, in that it confines the right of self-defense under the law of threats to a purpose and intent to kill. Appellant asked special instructions in regard to this matter which were refused, embodying the further proposition that he had the same right to defend against apprehension of serious bodily injury. We are of opinion that appellant's contention in this respect is correct. A party has the same right to defend his person from serious bodily injury under the law of threats as he would to protect his life. Without reviewing the court's charge, and special charges asked and refused, we are of opinion upon another trial the court should instruct the jury as well in regard to the defense against apprehension of serious bodily injury as against his life."

We have thus reviewed at considerable length practically every question raised on the appeal. We desire to express our appreciation of the most admirable and thoroughly well prepared briefs of counsel both for the State and appellant, which have greatly aided us in the investigation of the case.

For the errors pointed out the judgment is reversed and the cause is remanded for proceedings in accordance with law.

*Reversed and remanded.*

## ON REHEARING.

### April 13, 1910.

RAMSEY, JUDGE.—In this case counsel for the State have filed a very able motion for rehearing, in which the opinion of the court is attacked on many points. All the matters discussed in the motion for rehearing were argued on original submission as well as presented in the briefs filed thereon, and were carefully considered by us in consultation, and we have seen no reason to change our attitude or opinion on the case.

1. In their motion for rehearing counsel for the State criticise the opinion of the court, urging, in substance, that there is an error in the second paragraph of the opinion of the court in the sentence reading as follows: "The movements of appellant at this point and other circumstances appearing in the evidence are such as, in our judgment, to raise the issue that he deliberately accosted defendant, watched his movements, and in connection with all the circumstances in the case, raised the issue that he went to him with the purpose and intent of provoking a difficulty," in that the word "defendant" after the word "accosted" is either a clerical error or a misstatement of the facts.

The original opinion now before us shows this sentence to be in this language: "The movements of appellant at this point, and other circumstances appearing in the evidence, are such as, in our judgment, to raise the issue that he deliberately accosted deceased, watched his movements, and in connection with all the circumstances in the case, raised the issue that he went to him with the purpose and intent of provoking a difficulty." There was no mistake in the opinion in the respect complained of.

2. In the same paragraph of the opinion it is stated "There were no witnesses to the killing." This is complained of as not being a strictly accurate statement, and, in a sense, it is correct. There were no eyewitnesses to the *beginning* of the difficulty, and no one saw anything that occurred until after the second shot was fired. Some part of the difficulty was seen by more than one witness, but there was no witness to the difficulty in a sense of throwing light on who was the aggressor in the difficulty, or whose testimony substantially affected the issue of provoking a difficulty or that threw much light on the claim of self-defense. The statement, therefore, while literally incorrect, is in substance true.

3. Counsel for the State most vigorously attack the decision which holds that there was error in charging the jury that appellant would have the right to seek deceased in a peaceable manner, and contends that the limitation on the right of so seeking him that it must be done in a peaceable manner was not only erroneous, but would institute a rule that would be hurtful to society, to the peace and good order of the State, and one that goes far beyond anything that has heretofore been held by us. It will be noted that in the original opinion that the writer did not agree to this opinion of the court on this point, and does not now agree to same. The majority of the court, however, have seen no reason to change their views on the proposition, and for the present at least the opinion must stand. In the only two cases where a charge like this has been the subject of review since I came on the bench—McCleary v. State, 122 S. W. Rep., 26, and this case—the writer has prepared the opinion of the court, and in such opinions, of course, wrote for the majority. It seemed, therefore, out of place to obtrude his own views in the opinions where he was speaking for the court. It could do no good now, probably, to write at length on the question, and in view of many matters pressing on us for attention, I shall not do so, but if the question should come before us again, I shall seek an opportunity to write at some length on the question, and reexamine the authorities and undertake to deduce and set out what I believe to be the correct rule.

4. All the matters arising in the case were not only carefully considered, but are fully treated in the opinion, and it seems unnecessary to review them.

The motion for rehearing is therefore overruled.

*Overruled,*