### CRESSIE AND ALMA CROWSON v. THE STATE.

#### No. 3818. Decided February 13, 1907.

#### 1.—Murder in Second Degree—Provoking Difficulty—Charge of Court.

Where upon trial for murder the evidence showed that the defendants with others went to the house of the deceased upon his invitation to settle the matter of disagreement between them peacefully, and upon their approach deceased threw his gun down upon them and told them to hold up their hands, and about that time the shooting began by which deceased and his wife were killed; the defendant and his companion not doing anything before the shooting commenced, it was error to charge on provoking the difficulty, and to limit the right of self-defense.

#### 2.—Same—Charge of Court—Weight of Evidence.

Upon trial for murder where the court charged that defendant's codefendant had been acquitted for the murder of deceased, Bob Anderson, but was still under indictment for the murder of deceased's wife; and that these facts could not be considered by the jury as proof of the guilt or innocence of these witnesses, or of these defendants, but could be considered by the jury on the issue as to the credibility of said witnesses (codefendants) and the weight to be given to their evidence, the same was on the weight of the evidence and reversible error.

Appeal from the District Court of Houston. Tried below before the Hon. B. H. Gardner.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*Moore & Adams* and *Adams & Adams,* for appellant.—On question of charge on weight of evidence: Mitchell v. State, 103 Am. St. Rep., 1.

*J. E. Yantis,* Assistant Attorney-General, for the State.—On charge on provoking difficulty: Foreman v. State, 33 Texas Crim. Rep., 277; Crews v. State, 34 Texas Crim. Rep., 544; Anderson v. State, id., 550; Harrell v. State, 39 Texas Crim. Rep., 227.

DAVIDSON, PRESIDING JUDGE.—A term of fifteen years confinement in the penitentiary was allotted each appellant under conviction for murder in the second degree.

Errors are assigned upon the charge of the court submitting the issue of provoking the difficulty as a limitation upon the right of self-defense. We believe this position is well taken. There had been a negro revival meeting in the neighborhood, and the defendants and quite a lot of young people, girls and boys, had attended it. On Friday

night, a few days prior to this homicide, the deceased made serious and vulgar statements in regard to the conduct of these boys and girls, in which they were charged with having engaged in adulterous and sexual intercourse, the parties being more or less connected by affinity and consanguinity. Shortly afterward this report, circulated by deceased, reached the ears of the defendants and of their friends and families. They called a meeting in regard to the matter, and had a negro named Henry Tillis before them. He admitted circulating the report, and signed what the witness termed a "lie bill" and stated, among other things, that he circulated the reports on the authority of the deceased, Alexander. Alexander ascertained the conditions and sent word to the parties concerned that if they would come down to his house the matter could be settled amicably. There may be some intimation in the testimony, however, that these statements in regard to visiting his house were in a defiant manner, but the appellants understood that if they called at his house the matter could be amicably settled. On the morning of the tragedy young Dr. Nelson mounted his horse and took what the witnesses called his "pill bags" and started off with the statement that he was going to visit a sick patient, a child who had been perhaps suffering from meningitis, and rode away. Directly after he left two younger brothers, Nelson boys and appellants went to the residence of the deceased, they being afoot. When they came in sight of the home of the deceased Dr. Nelson was sitting on his horse and appellant in the yard armed with a winchester, and the wife of the deceased seems to have been standing in the yard with a pistol in her hands. The testimony introduced in behalf of appellants shows that when Dr. Nelson rode up to the house of deceased he called for the deceased who, it is shown, was at the cowpen; when deceased ascertained the fact that Dr. Nelson was there calling for him, he went to the house, and had his wife to bring his gun. The testimony is not entirely clear as to the acts of Dr. Nelson and deceased, but it seems the deceased did not at the time shoot, but had his gun with him either for the purpose of defense or for the purpose of shooting Nelson, or as means of over-awing Nelson while he gave some expressions to his thoughts that were a little vigorous and not altogether peaceful, and somewhat un-theological. When the other boys came in sight they ascertained the condition of things, and one of the family of the deceased called his attention to the fact that the other boys were approaching. Deceased turned in their direction, walking towards them, and throwing his gun in position told them to hold up their hands, which they immediately did, and told them to hold them higher. One of the witnesses said that he thought he was holding his hand up as high as he could, but tried to obey the command and still hold them higher, and about that time the shooting begun. It is not sought here by this statement to go into all the details, but simply enough to show in a general way the condition of things at the time of the difficulty. However, it may be stated that there was some evidence on the part of the State to show

that one or two of the boys that were approaching had pistols in their hands. That is a controverted fact and most emphatically denied by the others. The State introduced evidence tending to prove the contention that the deceased did not fire and that all the firing came from Nelson and the two appellants. The two younger Nelson boys were not armed and, therefore, did not shoot. It is further contended that Mrs. Alexander, wife of the deceased, fired with a pistol, and the deceased fired two or three shots. Deceased and his wife were both killed. None of the other crowd were wounded. We make this statement, without going into details, to show that the issue of provoking a difficulty was not in the case.

Appellants unquestionably had the right to go to the deceased and ask for an explanation of his statements, and they were not in any way in the wrong if they went there for that purpose only, and especially at the invitation of the deceased to settle these matters peacefully. If they went for the purpose of killing the deceased on account of the insulting language and reports circulated about the girls of the different families, in connection with the appellants above referred to, then the killing might have been manslaughter. If approaching the scene of the tragedy, they had done nothing or said nothing, and were forced by deceased to hold up their hands, and then deceased fired upon them in this condition, there is nothing in this to indicate provoking the difficulty, legally speaking. We are of the opinion that the issue of provoking the difficulty was improperly given, and appellants had the right, under the facts, to have their charge of self-defense submitted without this limitation.

Exception was also reserved to the following excerpt of the charge: "It has been shown that Henry Nelson and Ellis Nelson have been acquitted for the murder of Bob Alexander, but are still under indictment for the murder of Mrs. Alexander; these facts cannot be considered by you as proof of the guilt or innocence of these witnesses or of these defendants, but can be considered by you only on the issue as to the credibility of said witnesses and the weight to be given to their evidence." Bill of exceptions was reserved to this charge. We think the charge is error. Henry Nelson and Ellis Nelson had been acquitted under the indictment charging them with killing Bob Alexander, and the court went too far in the first place in stating that they had been acquitted of the *murder* of Alexander. The acquittal for this homicide cleared them of legal guilt, and it is the legal guilt that the trial deals with, and it is legal matters which form a predicate for a charge, and the court was further wrong in instructing the jury that they could not consider this as proof of the innocence of the parties. Of course, it could not be considered as evidence of guilt neither the acquittal of killing Bob Alexander or the charge against them for killing Mrs. Alexander, for the law presumes them innocent; not only with reference to Bob Alexander were they presumed innocent, but in this case the jury had so found. This character of evi-

dence could only be used, if at all, for the purpose of attacking the credibility of the witnesses, and could be considered by the jury in weighing their evidence. When the court instructed the jury that the acquittal of the Nelson boys could not be·regarded by them as indicative of their innocence, it was a charge upon the weight of the testimony. and adverse to the law. In weighing the testimony and giving such weight to it as they saw proper of the acquitted Nelson boys, the jury should not be told that they could not consider their acquittal as evidence of their innocence. It may be that a jury would weigh more highly the evidence of the party acquitted of crime than if he still stood under indictment or had not been acquitted. It might be the motive for swearing falsely, or the prompting to give truer testimony would weigh more in case of acquittal than in case of conviction, or even under pending indictment. These observations are made to show that this charge was on the weight of evidence and harmful to the appellants.

Another charge is criticised also wherein the court undertook to charge with reference to contradictory statements made by other witnesses who were not under indictments, on the ground that it assumes that such statements did affect the credibility of the witnesses and there were facts admitted showing bias or prejudice. On another trial the court will so frame his charge as not to be subject to the criticism of assuming facts or charging on the weight of the testimony.

It is seriously contended that the argument of one of the State's counsel was outside the record, and injurious to appellants' legal rights before the jury. We trust these arguments will not be indulged in future trials, and that believing it will not occur upon another trial, it is not here discussed. For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*