JOHN HOLLMAN v. THE STATE.

No. 5655.   Decided February 25, 1920.

Rehearing denied June 25, 1920.

1.—Murder—Manslaughter—Provoking Difficulty—Charge of Court.

Where, upon trial of murder and a conviction of manslaughter, defendant pleaded self-defense and claimed that his only purpose was in meeting deceased to get an apology from him and that he was forced by attack of deceased to defend himself, but it seemed reasonable that this attack was due to the acts and words of defendant and his companions, it was at least a question of facts for the jury, under a proper charge of the court, whether or not such acts and conduct of defendant and his companions produced and caused the attack and to submit a charge on provoking the difficulty, and there was no reversible error. Following Casey v. State, 50 Texas Crim. Rep., 392, and other cases.

2.—Same—Aggravated Assault—Charge of Court—Intent to Kill—Deadly Weapon.

Where the evidence was uncontradicted to the effect that the weapon used by the defendant was deadly in character and that the conclusion is inevitable that an assault was made with such weapon would be an aggravated assault, and same was not committed in self-defense, a charge of the court substantially submitting this issue was proper and there was no reversible error.

### 3—Same—Evidence—Intent—Acts of Defendant—Order of Testimony.

Where defendant complained of the refusal of the trial court to permit him to testify, that he had guns and arms at his home at the time he started to the scene of the homicide, and that he did not take any of the same with him, but the record showed that such testimony was later admitted, there was no reversible error, although the same might properly have been admitted at the time of the objection.

### 4.—Same—Evidence—Declaration by Defendant—Intent—Reiteration.

Where, upon trial of murder and a conviction of manslaughter, it was already in evidence that defendant's intention in meeting the deceased was for an amicable settlement, there was no reversible error in refusing appellant to reiterate his declaration later on.

### 5.—Same—Evidence—Motive—Acts of Defendant—Other Offenses—Suspended Sentence.

While on the witness stand appellant was asked if the trouble did not start on the evening of July 4th, because he cut the buggy tires of the deceased, which he answered in the negative. This was not reversible error, as this explained the acts of the deceased and his declaration that defendant· had cut his buggy tires, defendant denying the same at the time; besides, the bill of exceptions was defective, and moreover, the defendant having pleaded for a suspended sentence, proof of his guilt of other offenses was admissible. Following Martoni v. State, 74 Texas Crim. Rep., 90, and other cases.

### 6.—Same—Sufficiency of the Evidence.

Where upon trial of murder and a conviction of manslaughter, the conviction was amply sustained by the evidence, and that the jury probably inflicted the lowest punishment on account of defendant's youth, there was no reversible error.

### 7.—Same—Rehearing—Imperfect Self-defense—Provoking Difficulty—Charge of Court.

Where upon motion for rehearing appellant again insisted that the charge on provoking the difficulty was reversible error, and it is apparent from the record that the presence and conduct of defendant caused the attack upon him by deceased, or was calculated to do so, whether it was intended or not, there was no reversible error on the issue thus raised for the court to submit a charge on provoking the difficulty. Following Winters v. State, 51 S. W. Rep., 1110, and other cases.

### 8.—Same—Motive of Defendant—Intent—Malice—Acts of Defendant.

Where upon appeal from a conviction of manslaughter, appellant contended that the admission of testimony that a short time before the fatal difficulty he cut the rubber tires of the buggy belonging to deceased, etc., was reversible error, but there seemed no question from the record but that such testimony was admissible upon the issue of malice, and to show defendant's state of mind towards the deceased, there was no reversible error.

Appeal from the District Court of Kaufman. Tried below before the Honorable Joel R. Bond.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

87 Tex.—37

The opinion states the case.

*Critz, Lawhorn & McNair* and *Wynne & Wynne,* for appellant.—
On question of provoking the difficulty: Burnett v. State, 51 Texas
Crim. Rep. 22.

On question of other offenses: Black v. State, 187 S. W. Rep., 332;
Harrison v. State, 191 id., 548; Haney v. State, 122 id., 35.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On
question of provoking difficulty: Sorrell v. State, 169 S. W. Rep.,
299; Gray v. State, 61 Texas Crim. Rep., 454; Barstado v. State,
48 id., 255; Coleman v. State, 49 id., 357; and cases cited in opinion.

LATTIMORE, Judge.—Appellant was convicted in the District
Court of Kaufman County of the offense of manslaughter, and his
punishment fixed at two years confinement in the penitentiary.

Appellant was originally charged with the murder of one Bruce,
the homicide having taken place on the night of July 4, 1918. It ap-
pears from the record that, beginning late in the afternoon of said
day, there was a meeting at a country schoolhouse in Kaufman Coun-
ty, which extended on into the night, closing some time about eight
o'clock, and that deceased and his family were present at said meet-
ing; also appellant and three of his brothers.

Appellant was about nineteen years old, and lived with his father
and two of his brothers a short distance from said school-house; a
married brother of appellant living not far away.

Deceased and his family, including his son Eugene, who was about
sixteen years of age, lived further up the same road.

It seems that at the meeting at the school-house, and before night,
a younger brother of appellant had a difficulty with a smaller boy,
and that Eugene Bruce remonstrated with appellant's brother for
roughly treating the smaller boy. Appellant was nearby, and took
offense at the interference of young Bruce; and took a knife in his
hand, and began to use rough language to young Bruce, and to curse
him; and that the latter told appellant he was a coward to have his
knife in his hand, and other words followed; the damn lie was
passed, and the two exchanged a few blows. At this time, deceased
was nearby, and, according to some of the witnesses, urged his son
to maintain his side of the difficulty, and, according to appellant
and his brothers, said at the time that the appellant had been run-
ning over them, and that "the son-of-a-bitch had cut his tires a short
time before."

Shortly after the difficulty between the two boys, deceased and the
married brother of appellant had some words, and were kept apart
by the interference of bystanders, immediately following which, ap-
pellant, with his knife in his hand, walked several times around close
to deceased and his son.

After the meeting broke up, appellant and his brother Docie, went to their home, and in a short time his other brothers, Tom and Adolphus, with the wife and baby of the latter, also came to the home of their father; and presently, leaving the wife and baby there, the four brothers left and went back up the road toward the place where the homicide occurred. They seem to have separated just before meeting the deceased, and to have been some little distance apart at the time of such meeting. The married brother, Adolphus, met deceased, and turned back with him to where the appellant was. For some reason Adolphus Hollman was not used as a witness.

Deceased was accompanied at the time by his son Eugene, and his two daughters; and their version of the occurrence was, that when the parties met in the road, appellant accosted deceased, and said, "You called me a son-of-a-bitch, and I have come to make you take it back;" and that deceased said, "All right," and that almost immediately appellant struck deceased on the head with a club about three feet long; and when deceased fell, appellant turned on Eugene Bruce, and struck at him; and chased him down the road, saying that he was going to do him the same way.

Joe Shivers, a witness for the appellant, said he was about 120 or 125 steps distant, and that he heard the lick, and then the screaming.

According to appellant, and those of his brothers who testified, they went down to where they met the deceased, for the purpose of obtaining from him an apology to appellant for the language he had used during the difficulty at the school-house. In somewhat varying language these witnesses testified that when the parties met, appellant asked for an apology; that deceased refused to apologize, and jerked out his knife and started toward appellant, who thereupon struck him with a stick. Appellant, while a witness, admitted that a man of his age and strength could kill a man with the stick he used, which he said was as large as his wrist and about two feet long.

The doctor who went to see deceased, described his broken skull, and said that a stick capable of causing such a wound would, in the hands of appellant, be a deadly weapon, and that the inevitable effect of such a wound as he found and described would be death.

Noticing the contentions made by appellant in the order in which same are presented in his brief, we observe that he excepted to the court's charge on provoking the difficulty, for the alleged reason that there was no evidence which called for such a charge.

If there be any evidence calling for the charge given, this Court will uphold the action of the trial court in giving the same. The entire evidence for the appellant shows that after the meeting at the school-house ended, deceased started home with his family, and that appellant and his brothers came back in the night from their homes and placed themselves along the roadside and that when deceased came by, appellant asked him for an apology, which they say deceased

refused and pulled out his knife and started at appellant. Appellant's theory was self-defense, based on said testimony, and he claimed that his only purpose was to get an apology, and that he was forced by the attack of deceased to defend himself. The State's reply to the evidence of appellant supporting this theory, was that the words and actions of appellant and his brothers caused the attack, if any, by deceased, upon which appellant could base self-defense.

Admitting the truth of this testimony of appellant for the sake of argument, it would appear that immediately following the meeting and accosting deceased, the latter starting towards appellant with a knife in his hand. Something caused such conduct on the part of deceased, and it seems reasonable to attribute it to the acts and words of appellant or appellant and brothers. At least it was for the jury to decide, under a proper charge of the court, whether or not such acts and conduct of the appellant or of appellant and his brothers, produced and caused the attack, which he claims to have given rise to his right of self-defense. There was no exception to the form of the charge on provoking the difficulty, and we think the same was properly given. Appellant has a right to his theory of self-defense, but the State has also a right to have submitted to the jury its theory that the actions of deceased relied on as raising self-defense, were the expected results of the provocation arising from the acts and words of appellant or appellant and his brothers. There is no question as to there being trouble between deceased and his son on one side and appellant and his brothers on the other side at the school house, nor that after they went home that night appellant and his brothers all came back to the place where the homicide occurrd and were there ranged along the roadside when deceased came up. One of appellant's brothers testified that deceased said "What does this mean," and that appellant said he had come down to get an apology, and deceased said, "Apology hell, I look like apologizing," and started at appellant. These facts and the situation were enough to justify the charge mentioned. Winters v. State, 51 S. W. Rep., 1110; Gaines v. State, 58 Texas Crim. Rep., 631, 127 S. W. Rep., 181; McGrew v. State, 49 S. W. Rep., 228; Coleman v. State, 49 Texas Crim. Rep., 357; Smart v. State, 101 S. W. Rep., 990; Casey v. State, 50 Texas Crim. Rep., 392.

Appellant also claims errors in that part of the charge of the court, which told the jury as follows:

—"but if you believe from the evidence beyond a reasonable doubt that the defendant struck and killed the said W. M. Bruce with a stick and that he did not intend to kill the said W. M. Bruce by the means used, then you are instructed that the defendant would be guilty of an aggravated assault."

The exception thereto attempts to raise error by carving out a phrase from a paragraph of the charge, which, if taken alone, might

not be self-explanatory. This is not permissible, unless such phrase, when taken with the context, shows error; same will not be so considered by us. The whole paragraph of said charge is as follows, and is not erroneous:

"Now if you find and believe from the evidence, beyond a reasonable doubt, that the defendant, John Hollman, killed W. M. Bruce, but you further find that the means used in killing the said W. M. Bruce was of such nature as would not likely produce death, or that the defendant did not intend to kill the deceased by the means used or if you have a reasonable doubt thereof, then you are instructed that the defendant would not be guilty of manslaughter; but if you believe from the evidence beyond a reasonable doubt that the defendant struck and killed the said W. M. Bruce with a stick and that he did not intend to kill the said W. M. Bruce by the means used, then you are instructed that the defendant would be guilty of an aggravated assault, unless he acted in his own self-defense as self-defense is hereinafter defined."

The evidence was uncontradicted, to the effect that the weapon used by appellant was deadly in character, and the conclusion is inevitable that an assault made with such a weapon, would be an aggravated assault, if same were a less offense than manslaughter, and if the assault was not committed in self-defense; and that is substantially what the court told the jury in the paragraph of the charge last above quoted.

Appellant has a bill of exceptions to the alleged refusal of the trial court to permit him to testify that he had guns and arms at his home at the time he started to the scene of the homicide, and that he did not take any of the same with him. The court approves this bill, with the statement that such evidence was later admitted. Referring to the statement of facts, we find this explanation of the court to be in accord with the testimony as it there appears. The only contention here made is that the court committed error by refusing to permit the evidence on direct examination, even though he did allow the same to be brought out by cross-examination. What the jury want, are the facts, and no difference appears in the testimony as brought out on cross-examination from that which would have been given if said question had been answered in direct testimony. While such practice may not be commended; and might even be carried to an extent where it would amount to injury; still, only one instance appearing, and where the trial court probably changed his mind after making his ruling against such evidence, we would not think same to be an abuse of the rights of the accused. Under our liberal rules of practice, it is clear that appellant might have fully explored upon re-direct examination, the former forbidden field, if he had so chosen.

Appellant complains because—the State objecting on the ground that the question had already been answered—the appellant was not allowed to make answer to the question on re-direct examination,

to wit: "Did you go down there with the intention of having any trouble?" In his approval of this bill, the trial court says that this matter was admitted in testimony of the defendant. Examining the statement of facts, we note in appellant's testimony, the following statement: "I had no intention of going to meet Mr. Bruce when I left my father's house. . . . I went to Adolphus's house to play forty-two. . . . He told me about Mr. Bruce's apology to him. . . . Adolphus asked me to go down there. . . . The reason I went down there was because I wanted to settle it without any more trouble. . . . I went down there for the purpose of making peace or settling in some manner the difficulty with the man who had cursed me."

Other expressions of his amicable intentions appear elsewhere in appellant's testimony, and we are unable to see how his answer to the question set out in said bill, as apepars above, would make any clearer what he claimed to be his attitude toward the deceased at the time he went down to the place where he met him and the killing occurred. It follows, in our opinion, that no error appears by reason of the refusal of this evidence.

While on the witness stand, appellant was asked if the trouble did not start on the evening of July 4th, because he cut the buggy tires of Eugene Bruce. This was objected to for various reasons, which the court overruled, and appellant answered, "No, sir, not to my knowledge." This bill discloses nothing further as to the evidence, but the explanation of the trial court mentions the fact that appellant had testified to cutting the buggy tires. Referring to the statement of facts for verification of the explanation of the court below, we find that on his direct examination, appellant testified that at the time of the difficulty between himself and Eugene Bruce at the schoolhouse, a short time before the fatal encounter, deceased had said—"The damn son-of-a-bitch had cut his buggy itres," and that he, appellant, had never heard of this before that minute—that was the first time he had heard from him about the buggy tires. It appears from the evidence that deceased had a buggy which Eugene drove and called his, and that the rubber tires of this buggy had been cut a few days before this difficulty by some one.

Other bills of exception bring before us the fact that further in the testimony of the appellant, he was asked if he did not cut the tires of Eugene's buggy at a certain gathering, when a certain Howard Woodward, who was a witness for appellant, was with him, and over objection appellant stated that he did nothing of the kind. Later, the State placed Howard Woodward again on the stand, and he testified over objection, that he was with the appellant on a certain occasion in July, shortly before the homicide, and that he saw appellant cut the buggy tires of Mr. Bruce's buggy, and put some pieces of peaches in the back seat. Said buggy was the one Eugene Bruce was driving, and which he claimed as his. We see no error in the

action of the trial court in admitting this testimony. The appellant had filed his plea for suspended sentence, and in such case, proof of his guilt of other offenses is admissible, and is not limited to those involving moral turpitude. Williamson v. State, 74 Texas Crim. Rep., 289, 167 S. W. Rep., 360; Martoni v. State, 74 Texas Crim. Rep., 90, 167 S. W. Rep., 349. We are also of the opinion that evidence of the prior wanton destruction of the buggy tires of deceased and his son, on the part of appellant, would tend to show ill will toward the deceased and his son, both of whom were involved in the fatal difficulty, and that such evidence was admissible as bearing upon appellant's claim of friendly intent toward the parties, and that he acted in his necessary self-defense at the time of the homicide. We further believe such evidence admissible as explaining the statement attributed to deceased by appellant a short time before the fatal difficulty, in which appellant claimed deceased used the language for which he claimed he was seeking an apology at the time of the killing. We believe it was proper to ask appellant about these matters while a witness in his own behalf, and upon his denial thereof, to place witnesses on the stand and prove the truth of the matters inquired about.

We have carefully considered this record. The youthfulness of appellant, and the fact that he may have been enraged at deceased because of the language used by deceased, which, if true, was of such character as is regarded as insulting, probably caused the jury to convict him only of manslaughter, and to give him the lowest penalty, but we find no reversible error in the record, and the judgment of the trial court is affirmed.

*Affirmed.*

### ON REHEARING.

### June 25, 1920.

LATTIMORE, JUDGE.—There are no new questions raised by appellant in his motion for rehearing. He again insists that we should not have sustained the action of the trial court in charging on provoking the difficulty. We reviewed these matters rather fully in our former opinion, and see no reason to change our conclusion. We think it is apparent from a review of the facts in the case, that the State was justified in asking that a charge be given presenting the right of imperfect self-defense. There is no question but that a short time before the fatal difficulty, there had been an encounter between the son of deceased and the appellant, which came very near involving the deceased and several others seriously. It is beyond question that appellant, with his three brothers, went out in the night-time, and stopped deceased in the road, and that appellant said he went kinder behind the others; and as they saw deceased approaching, appellant

said he stopped by the stick with which the fatal blow was struck because he was afraid of deceased—afraid he would have trouble with him. It is also admitted that when deceased came up he wanted to know what this was about, and that appellant accosted him and according to the defensive testimony said that he wanted an apology. It is claimed by appellant that deceased replied something to the effect that he looked like apologizing, and started at appellant with a knife. It thus seems clear that the presence and conduct of appellant caused the attack upon him by deceased, whether it was intended or not. This being true, the question of provoking the difficulty would not be improperly submitted. Branch's Ann. P. C., p. 1093; Winters v. State, 51 S. W. Rep., 1110; Smart v. State, 101 S. W. Rep., 990. In every case where the acts and conduct of the accused are the cause of an attack upon him, it is a question of fact under appropriate instructions, whether his acts and conduct were for the purpose of provoking a difficulty or not or were reasonably calculated to provoke such. Circumstances alone may be often of sufficient cogency to justify a charge on provoking a difficulty. Rogers v. State, 71 Texas Crim. Rep., 271, 159 S. W. Rep., 44; Tate v. State, 35 Texas Crim. Rep., 235. Conduct of the accused alone may raise the issue of provoking a difficulty  Taylor v. State, 47 Texas Crim. Rep., 122. We see no reversible error in the action of the trial court in this particular.

Appellant also again urges his objection to a certain portion of a paragraph of the court's charge. We are unable to agree with this contention, and think we correctly decided the matter in the original opinion.

Appellant also renews his objection to the admission of testimony that a short time before the fatal difficulty, he cut the rubber tires on the buggy belonging to deceased, and put parts of peaches on the seat of said buggy. There seems no question but that such testimony would be admissible upon the issue of malice, and to show appellant's state of mind toward deceased and his son, both of whom were involved in the fatal difficulty, as well as the difficulty that almost immediately preceded it.

We have found no reversible error in said motion for rehearing, and same will be overruled.

*Overruled.*