## A. J. JONES V. THE STATE.

No. 23246. Delivered December 12, 1945.
Rehearing Granted January 30, 1946.

120

The opinion states the case.

*W. J. Baldwin,* of Beaumont, and *H. A. Coe,* of Kountze, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a period of ten years.

The State's evidence, briefly stated, shows that appellant and deceased were neighbors. Appellant lived on his own farm while the deceased Alex C. Beadle, lived upon a 37-acre tract which his son-in-law, T. E. Clark, had acquired from T. H. McKinney, who had theretofore purchased it from appellant. It seems that the land was conveyed by Jones to McKinney and by McKinney to T. E. Clark by meter and bounds, but the dividing line running west and east between the respective farms had never been surveyed and definitely established. However, an old fence which had been constructed from east to west many years ago was still standing on the premises. It appears that after Clark had acquired the 37 acres from McKinney and after the deceased was placed in charge of it by his son-inlaw he (deceased), under his power of attorney, had a conference with appellant with a view of reaching an amicable adjustment of their differences relative to the division line. He suggested to appellant that they get a surveyor to survey the land according to course and distance and definitely establish the line, but appellant declined to agree thereto. Thereupon a suit was instituted against appellant and upon a hearing thereof the court appointed a surveyor to ascertain the location of the line, mark and establish it. The surveyor, in obedience to the order, went to the premises to carry out the instruction from the court but appellant would not permit him to do so. This matter was brought to the attention of the court and appellant was cited to appear in court and show cause why he should not be held in contempt. He did appear and agreed to permit the surveyor to make the survey which disclosed that there were approximately twelve acres of land beyond the old

fence line that belonged to Clark. Appellant, on several occasions and to various parties, stated that he would kill anyone who interferred with the old fence. These threats were communicated to the deceased. Two days prior to the killing, the deceased was carrying posts to the recently surveyed line with a view of constructing a fence upon and along the same. He carried a shotgun with him, no doubt for his own protection. On the day of the killing, appellant, who was at work in his field, stopped his team and went hurriedly to his home. Soon thereafter the wife of the deceased heard a shot. She went to the place where she heard the report of a gun and found her husband lying dead near the old fence and appellant was plowing in his field. She left the body untouched and summoned neighbors and an officer to the scene of the killing. An examination of the body revealed that the deceased had been shot with buckshot.

Appellant's plea was self-defense and in support thereof he testified that a day or two prior to the killing, he noticed the deceased carrying posts onto his land; that he went there to see what the deceased was doing; that when he got a few steps from the deceased he (deceased) put his gun to his shoulder and said to him: "You s-- of a b----; don't you come a step further, or I will blow your guts out"; that on the day in question while he (appellant) was plowing in his field he went to the house to get a drink of water; that he saw a hawk fly out of his chicken yard; that after he had drunk some water he picked up his shotgun with a view of killing the hawk, but it flew further down the old fence line, and it appeared to him that it lit in a tree; that he went in that direction looking for the hawk when he suddenly heard the deceased say: "Drop that gun"; that he looked in that direction but did not see anyone; that deceased spoke up again saying: "If you don't, I will shoot your God d---- brains out." At this time he noticed the deceased standing in some brush by the side of the fence, and had his gun to his shoulder pointing it at him; that he (appellant) then jumped behind a tree, and when he did so, the deceased came out of the brush with the gun to his shoulder, commanding him to drop his gun, whereupon he shot the deceased in self-defense. Appellant also proved a good reputation as a peaceable and law-abiding citizen.

Under the facts herein stated the court instructed the jury relative to the law of murder with and without malice, and in a separate paragraph gave an instruction on the law of self- defense without any limitation. This was followed by another

paragraph in which he instructed the jury that if they believed from the evidence beyond a reasonable doubt that the defendant, prior to the 29th day of November, 1944, threatened to take the life of the deceased and that such threats, if any, were communicated to the deceased and that the defendant sought a meeting with the deceased for the purpose of slaying him, and having found him, did some act with the intent to produce an occasion to bring on the difficulty and that the same under the circumstances was reasonably calculated to provoke the difficulty and he, on such acts, killed the deceased in pursuance of his original design, then the defendant cannot justify his action on the ground of self-defense; but such killing would be murder. But, if the defendant had no such purpose in seeking the fatal meeting and did no act reasonably calculated to provoke the deceased to attack him, then his right of self-defense would not be forfeited, etc.

Appellant in due time objected to the foregoing charge on the ground that the issue of provoking the difficulty was not raised by any evidence; that it was an undue limitation of his right of self-defense; and for the further reason that he was entitled to an instruction on the law of imperfect right of self-defense. Whenever the facts or circumstances proven are such that the issue of provoking the difficulty is fairly raised, it is proper for the court to submit the same to the jury for their decision. We think that in the instant case the issue was raised because (a) the evidence shows previous ill feeling by appellant towards the deceased; (b) threats made by the appellant to kill the deceased as testified to by Mrs. Gore and which she communicated to the deceased; and (c) appellant's acts and conduct on the day of the homicide in going armed with a shotgun loaded with buckshot to the place where the deceased was at work, knowing that the deceased was armed and would most likely make an attempt to assault him when he saw appellant coming towards him with a gun. At least, the facts proven, when considered together, are sufficient from which the jury could reasonably draw the conclusion that he produced the occasion with the intent to kill. Therefore, it was proper for the court to submit to the jury for their consideration the issue of provoking a difficulty. In support of the conclusion herein expressed, we refer to the following authorities: Smart v. State, 101 S. W. 989; Tate v. State, 35 Tex Cr. R. 231; Winters v. State, 51 S. W. 1110; Hollman v. State, 223 S. W. 206, 87 Tex. Cr. R. 576.

Appellant contends, however, that notwithstanding there may be sufficient evidence from which the jury could infer that he

provoked the difficulty which terminated in the killing, yet he would have the right of imperfect self-defense and the court should have so instructed the jury, and that the refusal of the court to do so constituted reversible error. We are not in accord with his contention. As we understand the law relative to the right of imperfect self-defense, it arises where the accused provokes a difficulty, not with an intent to kill, but merely to make an assault to whip the assaulted party, but that by reason of his own acts and conduct he was driven to resort to extreme measures in killing the party he had provoked into a difficulty in order to protect himself from death or serious bodily injury.

What are the facts in the instant case? According to appellant's version of the unfortunate affair, he went down to where the deceased was at work, not for the purpose of creating a difficulty, but merely to kill a chicken hawk when suddenly the deceased, who was hidden from view by brush, commanded him to drop his gun, which command he repeated, and then emerged from the brush with a gun to his shoulders pointed in the direction of the appellant, whereupon he (appellant) fired upon the deceased in self-defense. Under this state of facts, he was entitled to an unqualified charge on that issue and such he received at the hands of the court. However, under the State's evidence and its theory of the case, the issue of provoking a difficulty, if believed by the jury, would not entitled him to a charge on the law of imperfect self-defense. There is not any evidence which called for such an instruction. It is our opinion that the court's charge, when considered as a whole, adequately instructed the jury as to the law upon every phrase of the case as presented by the evidence. The defendent's theory of self-defense was submitted to the jury in accordance with his evidence, as viewed from his standpoint. See Goodman v. State, 47 Tex. Cr. R. 388.

Bill of Exception No. 2 is in question and answer form without any certificate by the court that it was necessary that it be in such form for a better understanding of the questions raised therein. This court has held many times that a bill of exception 121 Tex. Cr. R. 465. Many other authorities might be cited in support of the opinion herein expressed.

From what we have said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The motion for rehearing presents one claim which, in our opinion, must be sustained.

The homicide took place at, or near, a disputed boundary line. Previous circumstances indicate an ill feeling between appellant and the owner of the land. It is evident that appellant made a threat, as detailed in the original opinion. A close question is presented as to whether or not the court properly charged on provoking the difficulty.

The evidence relied upon was properly in the case and constitutes circumstances favorable to the charge, but, in our opinion, it is lacking in that essential element required to take from one his right of self defense. The question has frequently been before this court and regardless of the circumstances leading up to the homicide, especially threats which had been made and communicated to the deceased, the question clearly arises: "Who made the first attack?" Branch's Ann. P. C., Sec. 1955. The importance of that which was done at the time of the homicide overshadows whatever might have been indicated by previous circumstances. It has been said that a party may have a perfect right of self defense without being entirely free from blame or wrong doing in the matter. If his wrongful act was not intended to produce the occasion and was not reasonably calculated to do so—that is to provoke the very difficulty in question—his right of self defense would still be available to him. Mason v. State, 228 S. W. 952.

Again, it has been held, in Crow v. State, 88 S. W. 814, that where the accused, after having a difficulty with deceased, went for his pistol and returned for the purpose of renewing the difficulty, or killing the deceased, but said nothing and did nothing to deceased when he reached him which was reasonably calculated to provoke a difficulty, the evidence was insufficient to justify a charge on provoking the difficulty. See also Pollard v. State, 73 S. W. 953; Crowson v. State, 100 S. W. 782; Munden v. State, 64 S. W. 239; Chambers v. State, 79 S. W. 572: and McCandless v. State, 57 S. W. 672.

In the case before us appellant went alone to the scene of the homicide. He alone testified as to what took place. There is no evidence that he made any motion, spoke any words, or per-

formed any act at that time which caused the deceased to draw the gun on appellant. We may not speculate as to what did occur even though every circumstance preceding the homicide indicates that he went for the purpose of taking the life of Beadle. His story of his purpose for going there will likely not appeal to another jury. Nevertheless, he is entitled to a charge on the law, and it appears that this court has consistently held contrary to the charge given.

Appellant's motion for rehearing is granted. The judgment of the trial court is reversed and the cause is remanded.