**Larry Aaron WILLIAMSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 83 011 CR.**

Court of Appeals of Texas, Beaumont.

Oct. 19, 1983.

Discretionary Review Granted March 14, 1984.

Donald M. Brown, Conroe, for appellant.

James Keeshan, Dist. Atty., Conroe, for appellee.

## OPINION

BROOKSHIRE, Justice.

Larry Aaron Williamson was indicted for the offense of murder. A jury found Appellant guilty of murder. The jury was discharged. Punishment was assessed at 20 years confinement. After the Appellant's Motion for New Trial was overruled, this appeal was prosecuted.

On or about December 22, 1981, a captain in the Montgomery County Sheriff's Office received information from an unnamed informant that the Appellant had shot and killed Rick Owen Jamison and burned the remains of Jamison near Appellant's residence. Several officers went to Appellant Williamson's residence in a rural, heavily wooded area on December 23, 1981. Upon observing a pile of ashes in an open area or yard near the Appellant's residence, containing what they believed to be pieces of bone, the peace officers examined the burned area and sifted parts thereof to find pieces of bone, teeth and a jawbone that had the appearance of being a human one. Subsequent to sifting the ashes and other contents of the burned area, the investigating officers obtained a search warrant. The search warrant, based on the discovery of the human bones and teeth, authorized a search of the residence and the seizure of certain described items. During the execution of the search of the residence, the Appellant arrived at his home. He was arrested. While in an admittedly custodial interrogation, a confession was obtained from the Appellant. The first ground of error concerns the admission before the jury of this custodial confession. The Appellant forcefully argues that reversible error was committed by admitting the confession because the form of the custodial statement or confession did not conform and comply with *TEX.CODE CRIM.PROC.ANN. art. 38.22, Sec. 2* (Vernon 1979).

Since August 29, 1977, and including December 23, 1981, (the date of the custodial confession) *TEX.CODE CRIM.PROC. ANN. art. 38.22, Sec. 2 (a)(3) and (4)* (Vernon 1979), provides:

"Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

"(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.-17 of this code or received from the person to whom the statement is made a warning that:

. . . .

"(3) he has the right to have a lawyer present to advise him prior to *and* during any questioning;

"(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to *and* during any questioning; . . . ." (emphasis added)

Facially, the confession reads, inter alia, in printed form as follows:

*"I have now been warned by Detective Mock* the person to whom I am making this statement, *and was so warned by Detective Mock prior to any questioning of me by Peace Officers* while I was under arrest: (1) that I have the right to have a lawyer present to advise me either prior to any questioning *or* during any questioning: (2) that if I am unable to employ a lawyer I have the right to have a lawyer appointed to counsel with me prior to *or* during any questioning, and (3) I have the right to remain silent and not make any statement at all and that any statement I make may and probably will be used in evidence against me at my trial; and (4) I have the right to terminate the interview at any time, and (5) Any statement I make may be used as evidence against me in court." (emphasis added)

*TEX.CODE CRIM.PROC.ANN. art. 15.-17* (Vernon Supp.1982–1983) reads:

"Art. 15.17 Duties of arresting officer and magistrate

"(a) In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested. The magistrate shall inform in clear language the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to remain silent, of his right to have an attorney present during any interview with peace officers or attorneys representing the state, of his right to terminate the interview at any time, of his right to request the appointment of counsel if he is indigent and cannot afford counsel, and of his right to have an examining trial. He shall also inform the person arrested that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law."

The very first part of the custodial confession reads:

"Statement of Larry Aaron Williamson, taken at Conroe, Texas, Montgomery County, Texas.

"On the 23rd day of December, 1981, at 7:35 o'clock P.M. I, Larry Aaron Williamson, was taken before Detective Mock, a Magistrate at his office in Conroe, Texas, Montgomery County, Texas, who informed me:

"L.A.W. Of the accusations made against me;

"L.A.W. That I had a right to retain counsel;

"L.A.W. That I had a right to remain silent;

"L.A.W. That I had a right to have an attorney present during my interview with peace officers or attorneys representing the State;

"L.A.W. That I have a right to terminate an interview at any time;

"L.A.W. That I have a right to request appointment of counsel if I cannot afford counsel;

"L.A.W. That I have a right to an examining trial;

"L.A.W. That I am not required to make any statement, and any statement I make may be used against me." [Each one of the immediately above quoted sentences was initialed with "L.A.W." (Larry Aaron Williamson).]

The State agreed that the statement or confession was a result of a custodial interrogation and Detective Mock admitted that he was not a magistrate of any type, stating that no magistrate could be located late on December 23, 1981, and that the words "a Magistrate" should have been deleted. On the second page of the confession, signed separately by Larry A. Williamson, we find these words:

"I CAN READ AND WRITE THE ENGLISH LANGUAGE AND I HAVE READ THIS STATEMENT CONFESSION WHICH I HAVE MADE OF MY OWN FREE WILL, WITH NO PROMISES MADE TO ME, THIS STATEMENT CONSIST[S] OF TWO PAGES, AND I FIND IT TO BE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE."

Dated December 23, 1981, at 7:35 P.M., the Appellant signed an additional document entitled "WAIVER OF RIGHT TO REMAIN SILENT AND OF RIGHT TO ADVICE OF COUNSEL". The waiver reads:

### "STATEMENT OF RIGHTS

"That I have the right to have a lawyer present to advise me either prior to any questioning or during any questioning:

"That if I am unable to employ a lawyer I have the right to have a lawyer appointed to counsel with me prior to or during any questioning:

"That I have the right to remain silent and not make any statement at all and that any statement I make may and probably will be used in evidence against me at my trial:

"That I have the right to terminate the interview at any time:

"That any statement I make may be used as evidence against me in Court. "I HAVE READ THIS STATEMENT OF MY RIGHTS AND IT HAS BEEN READ TO ME, AND I UNDERSTAND WHAT MY RIGHTS ARE.

"DATE: 12–23–81

 "Larry A. Williamson
 "Signature

"TIME: 7 35 PM"

"WAIVER

"I DO NOT WANT A LAWYER AT THIS TIME. I UNDERSTAND AND KNOW WHAT I AM DOING. NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR FORCE OF ANY KIND HAS BEEN USED AGAINST ME. I HEREBY VOLUNTARILY AND INTENTIONALLY WAIVE MY RIGHTS AND I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS.

"DATE: 12–23–81

 "Larry A. Williamson
 "signature

"TIME: 7:37 PM"

"CERTIFICATION

"I HEREBY CERTIFY THAT THE FOREGOING WAIVER OF RIGHT TO REMAIN SILENT AND OF RIGHT TO ADVISE [ADVICE] OF COUNSEL WERE READ BY ME TO THE ABOVE SIGNATORY, AND THAT HE/SHE ALSO READ IT AND HAS AFFIXED HIS/HER SIGNATURE HERETO IN MY PRESENCE.

"J. Gregson
"witness

 "Leo Mock, Jr.
 "signature

"Jerry Bender
"witness"

It is apparent that this waiver was executed virtually simultaneously with the confession.

No attack is made and, indeed, no hint is voiced that the confession was obtained by force, coercion, threat or was in any manner involuntary. It is not contended that the confession is invalid because of any promise whatsoever of pardon or parole. The custodial statement was freely made. The sole contention to make inadmissible the confession is that the warnings given to Appellant by Detective Mock do not comply exactly with the wording of *TEX. CODE CRIM.PROC.ANN. art. 38.22, Sec. 2* (Vernon 1979), and more specifically *TEX.CODE CRIM.PROC.ANN. art. 38.22, Sec. 2(a)(3) and (4)* (Vernon 1979).

At the time the confession was made, in a separate document, the Appellant said, at that very time, that he did not want a lawyer on December 23, 1981, at 7:35 P.M. or 7:37 P.M.; that he understood and knew what he was doing; that no promises or threats had been made to him and that he was under no pressure or force of any kind that had been used against him; that he, on that date and at that very hour, voluntarily and intentionally waived his rights and that he was willing to make a statement and answer questions. Appellant simply did not want a lawyer at or during the time the confession was given. The waiver and confession were obviously from their relevant wording (which is not challenged) intelligent, knowledgeable, conscious, free and voluntary—free from duress, force, coercion, threat, fraud or any promise of pardon, parole or probation.

 *TEX.CODE CRIM.PROC.ANN. art. 38.22, Sec. 2(a)(3) and (4)* (Vernon 1979) was complied with in a very substantial way. And viewing the entire custodial confession, statement of rights and the waiver given, made and signed virtually contemporaneously; we hold that the entire custodial confession was properly admitted into evidence. We hold that the Appellant was advised in a substantially correct way of his rights in more than substantial compliance with *TEX.CODE CRIM.PROC.ANN. art. 38.22.* A warning, when reading the whole confession plus the statement of rights, waiver and certifica-

tion, which convey in only very slightly different language the precise meaning of the statute, is adequate to comply with the statute. The Appellant's contention is based on a narrow, technical, virtually meaningless, different, wording from the exact wording of the statute. We hold that the underlying constitutional privilege protected by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), has been fully honored in the case before us. Indeed, under this unique record, considering the close and exact timing of the various instruments, custodial confession, waiver, statement of rights and certification, we hold that the confession was properly admitted into evidence before the jury. We find that the constitutional rights involving the privilege against self incrimination, the right to remain silent, the right to know that any statement the Appellant makes may and probably will be used in evidence against him, the right to counsel and to an attorney—being the basic rights addressed by *Miranda v. Arizona, supra* —were all properly observed in the case at bar. These rights, of course, can be waived provided the waiver is made by the Appellant voluntarily, knowingly and intelligently which was done in our case. Williamson did effectuate a valid waiver. We think that the custodial confession herein was made by the Appellant as a free and rational choice. Nothing in the record gainsays this. Nor was it the product of any kind of compulsion. The Appellant's first Ground of Error is overruled.

■ Ground of Error Number Two contends that the trial court committed reversible error in overruling the defense counsel's objection to the charge of the court which allegedly limited the Appellant's right to self defense by a later charge on "provoking the difficulty" which Appellant urges was not fairly raised by the evidence. The evidence before us tends to demonstrate, from the physical evidence, that the probable scene of the shooting was the Appellant's living room, described as a rather large room, with the dimensions of approximately 15 feet by 40 feet. The living room faces the south and is entered by the front door. The detailed arrangement of the furniture in the living room is related and set out in the record. The Appellant's confession reveals that the deceased was seated on a couch (by a stereo) which was across from and at the other end of the living room from where the Appellant was seated and from where he fired a shot. Appellant's rifle was leaning against the wall beside him. The Appellant, in his custodial confession, related how he had started an argument with Ricky Jamison, telling Jamison that he was going to have to leave and saying to the deceased: "Aside from all of this my house is not a retreat for thieves who would burglarize my neighbors." Ricky was shot one time in the head just above the left ear. Although there is evidence that Ricky had lunged toward the machete, he did not reach it. Viewed in a favorable interpretation, the custodial statement does tend to set up a claim of self defense. However, viewed in another reasonable yet less favorable light, the Appellant's words and his actions—where he was seated, where the rifle was located—have a tendency to show an intent or design on his part to either seriously injure or get rid of the deceased. Adding to the physical facts, the nature of the single fatal rifle bullet right above the left ear, the location of the deceased and the Appellant and superimposing on these facts the Appellant's meticulous and very careful attempt to conceal the crime totally, evidence exists in the record giving rise to a reasonable inference that the killing was or could have been premeditated and that the hostile and belligerent words of the Appellant tended to and could be considered as calculated to provoke Jamison into giving the Appellant an excuse to shoot at him. Self defense was an issue in this case and, if the Appellant did some act or used some words which were intended to cause the difficulty or were calculated to bring about the difficulty; then it was proper for the court to give a charge on "provoking the difficulty". The court gave an independent charge on self defense. Viewing the entirety of the relevant facts,

circumstances and evidence physical, verbal and documentary, we find that the evidence in this case did raise the issue of "provoking the difficulty". There was no error in the court's charge in submitting the same to the jury. In *Stanley v. State*, 625 S.W.2d 320 (Tex.Crim.App.1981), at page 321, the court wrote:

"A charge on provoking the difficulty should not be given unless self defense is an issue and there are facts in evidence which show that the deceased made the first assault on defendant and that the defendant, in order to have a pretext for killing or inflicting bodily injury on the deceased, did some act or used some words intended to and calculated to bring on the difficulty. *Carter v. State*, 87 Tex.Cr.R. 200, 220 S.W. 335 (1920); *Varnell v. State*, 26 Tex.App. 56, 9 S.W. 65 (1888); 4 Branch's 2d ed. 461, Sec. 2134."

We find that the record in this case fits precisely the reasoning, language and holding in *Stanley, supra*. Appellant relies on *Jones v. State*, 192 S.W.2d 155 (Tex.Crim. App.1945). We find our case importantly different and meaningfully distinctive from *Jones, supra*, in that the Appellant's posture, positioning acts and words, tended to raise the issue of "provoking the difficulty" in that they were reasonably calculated to provoke the very difficulty in question. In *Jones, supra*, we find the following language:

"In the case before us appellant went alone to the scene of the homicide. He alone testified as to what took place. *There is no evidence that he made any motion, spoke any words, or performed any act at that time which caused the deceased to draw the gun on appellant.*" (emphasis added)

Ground of Error Number Two is overruled.

Ground of Error Number Three states that the trial court committed reversible error by admitting into evidence the identification of deceased's remains.

■ Dr. Eugene Brander of Loves Park, Illinois, was the treating dentist for Rick Jamison. Dr. Brander came to Texas and testified, in person, at the trial. His dental records of Jamison, being State's Exhibit No. 47, were properly admitted into evidence as business records under *TEX.REV. CIV.STAT.ANN. art. 3737e* (Vernon Supp. 1982–1983). Dr. Brander's in court testimony that Jamison had been his dental patient, along with Jamison's dental records made by Brander, were subject to cross-examination and were admissible. Under *TEX.REV.CIV.STAT.ANN. art. 3737e, Sec. 2* (Vernon Supp.1982–1983), the matters made the basis of Appellant's complaint, we find, may be shown to effect the weight and credibility of the memorandum or record but shall not defeat their admissibility.

■ After State's Exhibit No. 47 had been admitted into evidence and after the testimony of Dr. Brander, Dr. Stinson testified to his own findings, based on his own personal examination of the dental remains of Jamison. Dr. Paul Stinson examined State's Exhibit No. 47 and affirmatively testified that he (Dr. Stinson) qualified as an expert forensic oral pathologist, having been certified by the American Board of Forensic Oldontology. Dr. Stinson often does consultation work with the Harris County Medical Examiner and explained in detail how dental findings are used to identify the remains of a deceased person. He personally examined the dental remains of Ricky Owen Jamison. And he identified his own actual, physical, dental remains as being those of Jamison and being of the same human being that State's Exhibit No. 47 related to; that is to say, he made the findings that were necessary and required to make the positive identification of Ricky Jamison as it related to both the physical dental remains and State's Exhibit No. 47. Stinson detailed, at length, how he arrived at his identification. Stinson testified concerning a series of x-rays, approximately six in number, made at the University of Texas Dental Branch, by himself and in his presence with the aid of a x-ray technician. The Texas dentist, Stinson, received from the hands of Detective Mock two portions of the maxilla, or upper jaw, portions of the

lower jaw and 26 fragments of teeth. These remains were identified and contained in State's Exhibit No. 59 which came into evidence. Then using principally State's Exhibits 48 through 57, Stinson correlated with unusual accuracy and in remarkable detail the dental remains with State's Exhibit No. 47. These several exhibits were corrolated and proved up by detailed, extensive x-rays and verbal testimony. Also the dental remains of Rick Jamison were properly identified, authenticated, proved up and placed into evidence through State's Exhibit No. 59. Reviewing and analyzing the entire record, we find that the corpus delicti in this prosecution for murder is completely present. The corpus delicti consists of two elements: that the body, or the remains of the body, of the deceased were found and identified and that the death of the deceased was caused by a criminal act of another. In addition, we find that the record is replete and ample to sustain the verdict that the Appellant, by criminal acts, caused the death of Jamison. Appellant brings forth such cases as *Batterbee v. State*, 537 S.W.2d 12 (Tex.Crim. App.1976); *R.C.S. v. State*, 546 S.W.2d 939 (Tex.Civ.App.1977); *Smith v. State*, 363 S.W.2d 277 (Tex.Crim.App.1963). The case at bar is meaningfully different. In any event, concerning the hearsay question, we think the case at bar is governed by *Moore v. Grantham*, 599 S.W.2d 287, 289 (Tex. 1980). In *Moore, supra,* the Court declared its understanding of the Texas law in relation to expert opinion testimony to be that *"[W]here it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay* his testimony is admissible." *Slaughter v. Abilene State School*, 561 S.W.2d 789, at 791 (Tex. 1977). We overrule Ground of Error Number Three.

 Appellant challenges the sufficiency of the evidence in this case to sustain the conviction. This ground of error, concerning "the standard for appellate review", as correctly applied in circumstantial evidence cases and direct evidence cases, was addressed and definitively written on as recently as July 20, 1983, in four consolidated cases styled *Wilson v. State*, 654 S.W.2d 465 (Tex.Cr.App.1983); *Freeman v. State*, 654 S.W.2d 450 (Tex.Cr.App. 1983); *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App.1983); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983) July 20, 1983. The opinion of the Court was rendered on the State's Motions for Rehearing. In these consolidated cases, in a very learned and well reasoned opinion, the Court of Criminal Appeals of Texas wrote that the question of sufficiency of evidence to sustain a state criminal conviction implicates the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 319 n. 12, 99 S.Ct. 2781, 2789 n. 12, 61 L.Ed.2d 560 (1974), "announced ... the constitutional minimum required to enforce the due process right" to be free from conviction except on proof beyond a reasonable doubt. The Court then reasoned:

"[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' *Woodby v. INS.*, 385 U.S. [276] at 282 [87 S.Ct. 483, at 486, 17 L.Ed.2d 362]. Instead, *the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.* See *Johnson v. Louisiana*, 406 U.S. [356] at 362 [92 S.Ct. 1620, at 1624, 32 L.Ed.2d 152]. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the fact-finder's role as weigher of the evidence is preserved through a legal con-

clusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law. [Footnotes omitted and emphasis added.]" 443 U.S. at 318–319, 99 S.Ct. 2788–2789.

*Jackson v. Virginia, supra,* sets the standard for review of state criminal convictions by the United States Courts. The due process requirements that *Jackson, supra,* announced were based expressly on the Fourteenth Amendment. Hence, they are binding upon the state courts and constitute a minimum standard for sustaining a conviction. Citing and quoting from *[In re] Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ], the Texas Court of Criminal Appeals, following the Supreme Court of the United States, recognized that "proof beyond a reasonable doubt" is an essential of the Fourteenth Amendment and due process. Hence, when a criminal conviction was obtained, but no rational trier of fact could have found guilt beyond a reasonable doubt, then the State criminal conviction cannot pass Federal constitutional muster. The Court of Criminal Appeals wrote further as follows:

"It follows that circumstantial evidence should not be tested by an *ultimate* 'standard for review' different from direct evidence; the standard in both kinds of cases is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Accord *Griffin v. State,* 614 S.W.2d 155 (Tex.Cr.App.1981).

"Still, we are unable to devise or discover any reason, compelling or otherwise, for abandoning the utilitarian 'exclusion of outstanding reasonable hypotheses' analysis for *applying* the above 'standard for review' in circumstantial evidence cases. By the nature of circumstantial evidence, in order to determine it rationally establishes guilt beyond a reasonable doubt, a process of elimination must be used. Illustrative is *Taylor v. State,* [653] S.W.2d [295] (Tex.

Cr.App., Nos. 65,286 and [65,287], delivered June 22, 1983). We there cited the *Jackson* 'standard for review;' in actually assessing the evidence, no method *other than* a process of eliminating the guilt of others under the evidence could be fashioned to effectively conclude the evidence rationally established Taylor's guilt beyond a reasonable doubt. See also *Girard v. State,* 631 S.W.2d 162 (Tex.Cr.App.1982). Stated in the converse, if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding.

. . . .

"In sum, we are convinced there are no better analytical guidelines for assaying whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt in any given conviction had upon circumstantial evidence than those we currently employ."

We have carefully followed the reasoning and standards of appellate review set out in *Wilson; Freeman; Carlsen and Denby, supra,* and we find that the evidence is sufficient to sustain this criminal conviction, verdict, judgment and sentence. Ground of Error Four is disallowed.

Ground of Error Five advances that reversible error was committed when the Appellant's Motion for New Trial was overruled. A paragraph in the Motion for New Trial alleged prosecutorial misconduct on the part of the State's attorney in sending out its post-trial letter to each member of the jury. The letter, itself, is shown in the record. Although some of the language in the letter is aggressively strong and compelling; nevertheless, the letter clearly states that if the lawyer for the appellant calls upon the individual jurors and asks to discuss jury misconduct then: "[Y]ou are certainly free to do so. However, you are under no obligation to do so either."

The only citation of any type of authority argued and urged by Appellant under his Ground of Error Number Five is described

as *"Bar Committee Opinion 26 (April, 1950)".* We confidently feel that this is Opinion No. XXVI by the Committee on the Canons of Ethics as set out in *13 TEX.B.J. 466* (1950). The said Opinion No. XXVI was only relevant to and concerned a letter by a successful plaintiff's attorney in a civil damage suit. The writer highly complimented the jury, advising them that the "insurance carrier" for the defendant would probably call upon them in an effort to prove by them that certain matters, enumerating these matters, were considered by the jury which would constitute misconduct, and *assuring the members of the jury that nothing of the sort occurred,* advised the jurors *to refuse to talk to such representative* if he called upon the jurors.

■ The letter before us, written by Honorable William H. Behler, Jr., Assistant District Attorney for the Ninth Judicial District, was not as strong inasmuch as he did not unequivocally advise the jurors "to refuse to talk". We sincerely think the letter was poorly worded but, in this murder prosecution, we think the letter does not constitute reversible error inasmuch as the Appellant has not shown any harm. It is of interest to note that the letter also relates:

> "As Mr. Brown, attorney for the defendant, may have explained to you in the hallway, they will in all probability appeal your decision in this case. If Mr. Brown calls upon you and asks to speak with you about the case, you are certainly free to do so. However, you are under no obligation to do so either."

If this paragraph in the letter reflects the true facts then apparently Mr. Brown, the able, resourceful and scholarly advocate for the Appellant, had the chance to talk with the jurors first. In any event, we have not been cited to any authority which mandates the reversal of a conviction for murder based upon an opinion of the Committee on the Canons of Ethics.

■ The required procedure for showing reversible error based on jury misconduct was decided and outlined in *Stephenson v. State,* 494 S.W.2d 900 (Tex.Crim.App.1973).

If the jury misconduct was of such a nature that it would be known only to the jurors, then an affidavit of a juror was proper. If the Appellant is unable to secure an affidavit, then it is incumbent upon Appellant to demonstrate this inability and to additionally show reasonable grounds for believing that such misconduct actually took place. Yet, the affidavit is only a pleading that authorizes the introduction of probative, supporting evidence. The Motion for New Trial based on jury misconduct is not evidence in itself; the affidavit attached to the motion is not evidence. In our record, there is no evidence or testimony by way of a Bill of Exception, Bystander's Bill or otherwise showing what the jurors' testimony would have been. *Stephenson v. State, supra.* Ground of Error Number Five is disallowed. Finding no reversible error, the verdict, judgment and sentence below are AFFIRMED.