**Fisher Earl HAMPSHIRE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09 84 028 CR**

Court of Appeals of Texas, Beaumont.

April 24, 1985.

Bruce Smith, Beaumont, for appellant.

R.F. "Bo" Horka, Dist. Atty., Kountze, for appellee.

## OPINION

BURGESS, Justice.

This is a circumstantial evidence murder case. Fisher Earl Hampshire was convicted by a jury of murder after a plea of not guilty. The judge assessed punishment of sixty years in the Texas Department of Corrections. Appellant has brought forth four grounds of error.

The first ground of error questions the sufficiency of the evidence, alleging the evidence only amounts to a suspicion of appellant's participation in the offense and not proof beyond a reasonable doubt. In

reviewing this ground of error, we will, at the onset, follow the dictates of *Houston v. State*, 663 S.W.2d 455 (Tex.Crim.App.1984) and "look at all the evidence in the light most favorable to the verdict or judgment." Next, because this is a circumstantial evidence case; we will look to the pronouncements in *Carlsen v. State*, 654 S.W.2d 444 (Tex.Crim.App.1983) (opinion on motion for rehearing); *Freeman v. State*, 654 S.W.2d 450 (Tex.Crim.App.1983) (opinion on motion for rehearing); *Denby v. State*, 654 S.W.2d 457 (Tex.Crim.App.1983) (opinion on motion for rehearing) and *Wilson v. State*, 654 S.W.2d 465 (Tex.Crim.App.1983) (opinion on motion for rehearing). From these cases and looking to the discussion in *Williamson v. State*, 679 S.W.2d 523 (Tex.App.— Beaumont 1984), *rev'd on other grounds*, 672 S.W.2d 484 (Tex.Crim.App.1984), we will follow the proper standard of review using the correct analytical process. Thus, the standard for review is the same in both direct and circumstantial evidence cases and is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. If the state's evidence supports an inference other than a finding of the essential elements of the crime, then no trier of fact could rationally find the accused guilty beyond a reasonable doubt. We believe the crucial inquiry is whether the *evidence* supports another inference, not simply whether or not there is any other inference.

Jason Troy Dean was killed either in the late evening hours of October 19, 1981 or in the early morning hours of October 20, 1981. A pathologist testified the cause of death was a shotgun wound to the chest. He also testified in his opinion, the weapon was fired from between six and eighteen inches from the deceased, and the deceased had been shot twice; once in the chest and once in the shoulder. He further testified that a .410 gauge shotgun was capable of "performing" the injuries.

The deceased and the appellant first encountered one another at approximately 7:30 p.m. on October 19, at a small grocery store. Dean was talking to the store owner when the appellant approached, made small talk and indicated he was going rabbit hunting that evening. During this encounter the deceased mentioned he was going to spend the night in his truck at a spot down the road. Both men left the grocery store separately. Both men met again that evening at A.J.'s, a tavern and both stayed until approximately closing time. The appellant left first, then the deceased. There was testimony from an employee that the men did not have an argument, but had "some kind of words".

The next morning the deceased's body was found in his pickup truck. The doors of the truck were locked and the window on the passenger's side had been broken out. The deceased's body was in the floorboard of the truck on the passenger's side.

The appellant's ex-wife [1] testified that he arrived home around 1:15 or 1:30 a.m., October 20 and enlisted her aid in trying to get a Jeep vehicle he had been driving unstuck. The couple went to where the jeep was stuck in the mud, but upon arriving the appellant "wouldn't do anything; he just sat there ... he wouldn't answer me or anything. He just sat there and stared". Mrs. Hampshire then jumped out of the car and walked/ran back to their home. She testified the appellant returned home a short time thereafter, remained there a few minutes and left. Later that morning, Deputy Sheriff Osborne came to the Hampshire home. Mrs. Hampshire signed a consent to search and the deputy recovered a .410 shotgun. Mrs. Hampshire testified the shotgun belonged to the appellant and he had taken it with him in the Jeep when he had left the evening of October 19th.

Deputy Osborne testified he arrived at the murder scene at approximately 6:44 a.m. on October 20. Upon arriving, Deputy Osborne found the deceased in a blue pickup truck. The Jeep was stuck in a mudhole some 50 feet from the deceased's truck. He also found a spent .410 shotgun

---

1. The appellant and Mrs. Hampshire were divorced after the date of the offense.

shell approximately six feet from the passenger's side of the deceased's pickup truck. The Deputy testified that after receiving the shotgun, he examined it and found glass embedded in the butt of the gun and blue paint on the gun butt. On two occasions, Deputy Osborne, without objection, testified the paint found on the shotgun was the same as the paint on the deceased's truck. He also testified the glass found embedded in the gun butt was the same or similar type that was in the window of the truck. Deputy Osborne testified that he compared the gun butt and the damage on the area around the deceased's truck window and that in his opinion, a portion of the gun butt and a dent on the truck were compatible.[2]

■ A firearms expert testified the spent .410 shell found at the scene was fired in the .410 shotgun found in appellant's residence. The crux of the matter is the shotgun. There is ample evidence that the shotgun was the instrument that caused the damage to the deceased's vehicle. A shell was fired from the shotgun and the casing was found six feet from the deceased's truck. The wounds of the deceased were caused by a shotgun. A .410 shotgun was capable of causing the wounds. The evidence supports a finding that the .410 shotgun found in the gun rack in the home of the appellant was the murder weapon. But does the evidence support a finding that the appellant was the one who fired the shotgun? We believe it does. Even using the "exclusion of outstanding reasonable hypothesis" test, see *Jackson v. State*, 672 S.W.2d 801 (Tex. Crim.App.1984) the jury's finding must stand.

Because the murder weapon was in possession of the appellant before the crime, the vehicle driven by the appellant was in close proximity of the deceased, the murder weapon was found in the home of the appellant, and only the appellant or his wife could have put the gun in the rack, there is no other outstanding reasonable hypothesis, *which can be supported by the evidence*, other than the appellant fired the weapon. Ground of error number one is overruled.

Appellant's second and third grounds of error complain of portions of the prosecutor's closing argument. The second ground of error complains of a statement by the prosecutor:

"If I had brought you the expert of all experts from Washington, D.C. you know F.B.I. you know King Kong of the glass experts he could have told you nothing but that the glass was similar to the glass that came out of the car."

■ The specific complaint is this argument is outside of the record and beyond argument allowable by *Alejandro v. State*, 493 S.W.2d 230 (Tex.Crim.App.1973). The state counters that the remark was invited argument because defense counsel throughout his entire argument was being critical of the lack of evidence presented. Being critical of the state's evidence is certainly no invitation to interject new facts into a case at the time of argument. However, for the argument to be reversible error, it must either be extreme or manifestly improper or inject new and harmful facts into evidence. *Kerns v. State*, 550 S.W.2d 91 (Tex.Crim.App.1977). In looking to the next remark of the prosecutor:

"How many Chevrolet or blue pickup trucks do you think has been made? How many pieces of glass have been put in windows? Use your common sense there you know."

■ We find that these remarks of the prosecutor do not constitute such error as to require a reversal.

The next portion of argument referred to by appellant is:

"And the charge says—what we are saying right now is not evidence—and I am not talking here about things you didn't hear from the witness stand. I am

2. The shot gun was introduced into evidence and there were blown up photographs of the truck window and the butt plate of the gun.

mostly talking about what he said. That is the case they got—what he said." The appellant in ground of error number three characterizes this as a comment on the defendant's failure to testify. The test is whether the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Banks v. State,* 643 S.W.2d 129 (Tex.Crim.App.1982). We do not believe the remark in the instant case satisfies this test. Grounds of error number two and three are overruled.

Ground of error number four states that the trial court erred in receiving testimony from the appellant's former wife concerning confidential communications during their marriage. The relevant testimony follows:

"[PROSECUTOR]: All right. Where did he go after he came in the house?

"[WITNESS]: To the kitchen or the living room.

"[PROSECUTOR]: No, after he came in the house where did he go?

"[WITNESS]: Oh, you mean after he left?

"[PROSECUTOR]: Uh-huh.

"[WITNESS]: When he left that's when he asked me to go with him to get the jeep out.

"[PROSECUTOR]: What I was trying to say, he came to the house and he came in—

"[WITNESS]: Right.

"[PROSECUTOR]: —and you all had a conversation—

"[WITNESS]: Right.

"[PROSECUTOR]: —and he left.

"[WITNESS]: Right.

"[PROSECUTOR]: Where did he go?"

The complained of portion is "that's when he asked me to go with him to get the jeep out." This was an unresponsive answer to the prosecutor's question. It is apparent the prosecutor was not trying to elicit testimony as to any communications between the Hampshires, but was diligently trying to avoid such an inquiry. In view of the fact that the wife testified at length about the act of going to get the jeep, the complained of testimony cannot be said to be so harmful as to require a reversal. Ground of error number four is overruled.

The judgment of the trial court is affirmed.